BREAUX, C. J.
The defendant, Hubert Rodriguez, was indicted by the grand jury of the parish of Vermilion on the 28th day of March, 1905, for the alleged murder of Neville Lognon, in that parish, on the 1st day of May, 1904. He^was put on his trial j on the 19th day of June, 1905, and on the 26th day of June, 1905, the jury found a [ verdict of guilty of manslaughter against him, and his punishment was assessed by the trial judge at 10 years at hard labor in the penitentiary.
He reserved a number of bills of exceptions during the trial. We dispose of the first, and hold that:
The court’s ruling was not prejudicial:
The refusal of the court to permit the defendant to have a large number of witnesses summoned to prove character gave rise to the question before us for decision.
The defendant had been all his life a resident of the parish of St. Mary, where he was well known, and it was only since a comparatively recent date (about three years), that he was a resident of the parish of Vermilion. He averred that he was not as well known in the parish of Vermilion as he was in the parish of St. Mary.
In due - time prior to the trial he made application to the court to have 15 witnesses summoned from parishes adjacent to Vermilion — that is, from St. Mary and Iberia parishes — to prove his character. •
The trial judge on this application limited the number to six witnesses living out of the parish, and added that the defendant would have the right to obtain compulsory process for other witnesses residing out of the parish, provided he made provision for payment of costs.
True, as relates to the question of law involved, as urged by counsel, article 9 of the Constitution provides that in all crimihal prosecutions the accused shall have the right to compulsory process to compel the attendance of his witnesses. But the lawmaking power, by Act No. 67, p. 78, of 1894, limited the number of witnesses in criminal cases and at the same time did not trench upon the cited article of the Constitution.
To that end, the state limits the number of witnesses to six, whose presence can be secured by compulsory process, without cost. *517 When the- number exceeds that which the state allows without cost, then process is not denied to the accused, but it issues at his own cost.
In this we find a reasonable rule of which no defendant can reasonably complain.
We are informed by the record that the accused did not Call all the witnesses summoned to prove character.
Prom this we judge that on that score he had a larger number present than he actually needed to prove character. There must be some limit to character evidence. Wigmore, § 1908, note. Besides, all the facts concur in showing that defendant was not prejudiced by the ruling of which he complains.
We pass to the next ground urged-by the defense.
Defendant’s averment of incompeteney of a venireman.
Before the jury was completed, and before the last juror had been sworn, it is proper to state here, for it has bearing upon the question we are about to consider, the defendant had exhausted his peremptory challenges.
The defendant in the first place challenged a juror, Lindsay, for cause. The court refused to maintain this challenge. Thereupon the defendant challenged him peremptorily.
The error which defendant urges in regard to Lindsay (the juror tendered) is that his answer on his voir dire made it appear that, If he were taken on the jury, he would not believe the defendant as a witness under oath, although the defendant was a competent witness in his own behalf.
In connection with this objection, the learned counsel quoted in their brief Act No. 185, p. 355, of 1902, allowing an accused to testify in his own behalf, and pressed it upon our consideration.
Prom this act we excerpt the following, to wit:
“That the competent witness in all criminal matters shall be a person'of proper understanding; that the circumstances of the witness being a party accused shall in no wise disqualify him from testifying.”
And there is further in this act to the same tenor.
Venireman not incompetent:
The insistence on the part of the defense is that the defendant’s testimony must be considered in the light of the testimony of other witnesses.
To this we agree, but counsel for defendant say that the juror did not entertain such an opinion, that he was biased and incompetent, and in support of their contention in this respect reference is made to the evidence of the juror given while examined on his voir dire as follows, to wit:
“That he [quoting! would brand with suspicion the evidence of a defendant who testified on his own behalf for the sole reason that he is defendant and testifies on the trial.”
This was brought out by the form of the question propounded on the part of the defense, to which this juror replied in the affirmative on his voir dire. The other evidence by this juror while under examination by the defense was to the same effect. After he had been taken charge of by the court and examined, he very much modified his prior statement.
The examination of this juror must have taken some time.
A number of questions were propounded by respective counsel. He was asked, in substance, by the court, if he would take into consideration the intelligence of the witness, though an accused, his candor, his uncontradicted statements, his interest, his opportunity for knowing the facts, and would he consider his testimony. His (this juror’s) answer was in the affirmative. He said at first that he would consider the testimony of an accused with suspicion.
Subsequently he said that his suspicion would depend altogether upon the evidence of the case. The juror alternated from one view to another, and said toward the *518 end that he would make up his mind whether an accused had stated truly after he would have heard the evidence. He also said that an accused, if innocent, could tell the truth. The defense objected on the ground that defendant would testify in his own behalf, •and that the juror would not impartially ■consider his testimony.
The judge decided that he was a competent juror, and counsel challenged him peremptorily.
We hold that which cannot be reasonably denied that a juror should be selected to do .justice between the state and the accused. He should be without prejudice against the accused, hear his testimony, and give it due •consideration.
We think that taking the venireman’s answer as a whole he showed every disposition to comply with that requirement. This juror adhered to no statement indicating bias or determined opposition.
Learned counsel invite our attention to Hicks v. U. S., 14 Sup. Ct. 147, 37 L. Ed. 1137.
In the cited case the trial judge had inveighed in his charge to the jury against the defendant, accused of murder, who was a witness in his own behalf.
Justice Shiras of the Supreme Court, in passing upon the exception to the charge of the lower court, asserted with emphasis:
“That men may testify truthfully, although their lives hang in the balance, and that the law in its wisdom has provided that the accused shall have the right to testify in his own behalf.”
The utterance of the learned justice is elevating and inspiring, and must meet with the approval of every right thinking man.
Justice Shiras condemned the charge delivered by the trial judge.
“The privilege of testifying,” said the great justice, “would be a vain one if the judge, to whose lightest word the jury properly enough .gives great weight, should intimate that the dreadful condition in which the accused finds himself should deprive his testimony of probability.” The policy of the law should not be defeated by the hostile comments of the trial judge.
In the ease here there were no hostile comments made by the trial judge; nothing uttered by the venireman to indicate the least hostility. He was, as we understand, ready and willing to be properly influenced by the instructions of the court, as to the law of. the ease and was a competent juror. The judge having refused to sustain appellant’s challenge for cause, the defendant under his theory was prejudiced by reason of the fact that he had to use one of his challenges.
Another competent juror:
The trial judge held that Boudreaux was a competent and qualified juror. He also was challenged peremptorily by the defendant. The facts are very similar to those we have just reviewed.
We think that he also was a competent juror.
If the vague and frequently erroneous ideas and the merest impressions were to be taken as grounds sufficient to disqualify veniremen, it would frequently be very difficult to complete the panel of petit jurors.
Where good faith is manifested and the juror evidences the intention of deciding correctly, his failure to state at the moment that a question is propounded to him that he will comply with a particular provision of law will not always be sufficient 'to render him incompetent.
Threat by defendant:
The defendant had a lawsuit with the deceased 17 days before the homicide, in the magistrate’s court, in the ward in which they lived. The defendant lost his case. He then said something about intending to shoot the deceased.
The state was permitted to prove what was said by him after the trial. The defense ob *519 jected on the ground that proof of the state of defendant’s mind 17 days prior to the killing is too remote. The time was not too remote, and the occasion was suggestive. No mere distance of time should make defendant’s threat irrelevant. Time may be considered. It is not conclusive. Wigmore, § 1666.
Irrelevant testimony:
We pass to the following stated feature of the case (bill of exception No. 7): Defendant offered testimony touching a gap in the fence where deceased was killed. The court ruled that it was irrelevant, and as such inadmissible. Thereupon the defendant contended that for the bill of exception he was entitled to a record of facts. The defendant had sought on the cross-examination of a state witness to locate the interior of a school section upon which the accused resided and at which the homicide took place. This was, It seems, a disputed spot. There was a gap in the inclosure which caused bad blood. Cattle would stray into the field to the depredation, of which deceased, Neville Lognon, sought to put an end. An agreement was arrived at which afterwards led to disagreement.
The question propounded in regard to this gap was objected to by the state on the ground of irrelevancy.
The attorney for the defense then began to dictate to the clerk the facts he said to show relevancy. The court requested him not to have the copy taken, and declined to permit the clerk to take down any fact which counsel for the accused contended had been sworn to by any prior witness.
The ruling was correct. We base our conclusion on this point on the per curiam of the court, sustained, as it is, by the record. The statement of facts shows the facts upon which the bill is founded. Besides, the court’s per curiam shows that the testimony was absolutely irrelevant and inadmissible.
Impeaching on cross-examination:
At this point the objection interposed by the defense was that defendant was denied the right to impeach the testimony of the brother of the deceased.
The question propounded for the purpose of impeaching the' witness was in substance that the witness Adolphe Lognon had said in his examination in chief that, when Hubert Rodriguez, the accused, came to the scene of the homicide, Neville Lognon, the deceased, retreated. The intention in propounding the question was to prove that Neville, deceased, had not retreated;- that, on the contrary, Neville said:
“I will stand here, and, if Hubert misses me, we will both jump on him.”
Asserted threats had been made by this witness Adolphe:
Counsel for defendant disclaimed that the evidence was offered to show threats. They argue that it was to prove that witness had made a different statement out of court.
There was objection.
The court ruled what the deceased said at the time the defendant was in the distance was not admissible and irrelevant, as it was a threat. The effect would have been, said the trial court, to get to the jury hearsay evidence of threats by the deceased, which had never been communicated to the accused, and when there had been no hostile demonstration by the deceased against the accused. Counsel state in this bill of exception that the part of 'the question considered a threat was waived by them in the district court. The trial judge does not state to the contrary in the bill of exception. The insistence of the defendant was that the purpose of the testimony was to impeach the witness, as he had testified on his examination in chief that the deceased had retreated.
The ground of defendant here is, as we construe the bill of exceptions, that the witness Adolphe Lognon testified in chief that the *520 deceased was retreating at the moment of the killing, and that this testimony was material to the defense. The question was in form objectionable. Reduced to agree with waiver before mentioned it was not improper.
The threat, if it be considered that there was a threat made, was not admissible for it had not been communicated. But the question was admissible to the extent it sought to impeach the testimony of witness by proving that deceased had not retreated to that extent, however, only.
Taking down testimony:
This brings us to a consideration of the bill of exceptions taken to the court’s refusal to let the testimony of a witness be written down and annexed to the bill of exceptions (bill of exceptions 11). The purpose was to prove by this witness the particulars of a quarrel between the accused'and the brother of the deceased about two hours before the killing.
The trial judge formally states that the testimony was taken to prove an overt act as a foundation for the introduction of evidence of threats of the deceased and his dangerous character, and that what the brother of the deceased said or did on the morning two hours before the killing was irrelevant. That the matter at issue was the overt act.
The court refused to allow time to reduce the testimony to writing. It had already gone to the jury, and the court informed counsel, if they desired, he would in his résumé of the testimony 'State that the witness on the witness stand had testified to that effect.
The court’s ruling should have directed attention to the necessity of taking down the facts before the bill was taken, and the court should not have placed reliance exclusively upon inference and statement of conclusions from the facts.
Overt act:
The asserted hostile demonstration and the question growing out of the offer of defendant to prove the desperate character of deceased comes up for consideration.
The trial court held that there was no hostile demonstration and that the testimony did not show that there had been communicated threats.
The narrative of the bill shows that, while the testimony of the witnesses for the defense was taken touching the overt act, the district attorney reduced to writing some of the testimony of witnesses for the state for the purpose of having reattached to defendant’s bill of exceptions.^
Counsel for defendant requested the court to direct the district attorney to put down in the note of evidence touching the asserted overt act all the evidence which he intended to submit on the question of the overt act.
Thereupon the trial judge embodied the following in the bill of exceptions:
“I do not understand that Act No'. 113 of 1896 to go so far as to compel the district attorney, at the request of the defendant, to reduce to writing all the testimony he relies on in matter of the overt act. The judge passes upon the question of the overt act, upon the evidence of the whole case, and it is his duty to state what that ’ evidence is. The defendant may require that the evidence he offers be taken in writing, but he cannot complain that all the evidence in the case is not reduced to writing.
“His evidence on the overt act was reduced to writing, all he offered which the court considered relevant. The district attorney had reduced part of the testimony of the state to writing, but not all. The. judge had already heard the whole of the testimony of the state in chief the day before. ■
“If, in order to get the benefit of that testimony in the Supreme Court, the state must reduce it to writing, then, by failure to do so, the state loses the benefit of it; that is all. The accused cannot complain.”
The facts must be taken down “at the time and without delay.”
The facts could not thus be taken down and avoid useless consumption of time.
The court could not do as requested by defendant and at the same time follow a very plain provision of the statute which reads as follows:
“The clerk shall attach to the bill of exceptions a certified copy thereof, which shall be *521 taken by the appellate court as a correct statement upon which the exception is based.”
The evidence in chief had been heard the day before, and could not, under the words of the act, be taken down when the objection was raised.
But the trial judge should dictate to the clerk those facts testified to by other witnesses preceding the objection, as far as his memory will permit him to pronounce them correct. If the district attorney and the counsel for the defendant do not agree touching these facts, then he shall decide and dictate to the clerk the facts testified to by witnesses examined before the exception was taken. The inference of the trial judge from the testimony as written by himself is not in our view a full compliance with the statute. Let it be remembered that in this we refer to testimony given before the objection was raised. As to the testimony after the objection, it gives rise to no objection here.
We desire to emphasize that in no instance is there necessity to recall all the witnesses, reopen the examination already made, and re-examine all the witnesses that have already testified.
We cannot avoid recalling at this point that under the “orthodox common law” the judges were expected to take notes of important and salient facts. Wigmore.
Testimony before bill was taken not dictated and taken down:
We take up the bill of exceptions next in order. Counsel had called a witness to the stand for the purpose of proving the bad and dangerous character of the deceased. The state objected on the ground that the accused had been the aggressor, and the deceased had made no overt demonstration at the time of the killing, an objection which the court, sustained. -Whereupon the defense requested the court to have the clerk take down testimony of defendant’s witnesses bearing upon the overt act. The per curiam shows that the request was granted. Testimony of some of the state witnesses was reduced to writing and made part of the bill. Here the insistence of the defense was that the overt act had been established. We have not found error here with the light before us except that testimony given before this bill of exceptions was taken should have been dictated.
Testimony before the coroner’s inquest:
In ruling the court said it accepted as true the account of the killing as testified to by “Adolphe Lognon, Euzede Pellerin, and Ernest Rodriguez before the coroner on the day of the killing, a copy of which was attached to the bill.”
In the argument before this court the defendant, through counsel, objected to the consideration given to the testimony taken before the coroner’s inquest to impeach the testimony of witness. No such objection was raised in the district court.
The court says:
“Euzede Pellerin being dead, his testimony on the preliminary examination to the same effect as that before the coroner was introduced in evidence, and that Adolphe Lognon testified to the same effect on trial as he had before, and his testimony before the coroner is used for convenience.”
With painstaking care, worthy of commendation, the trial judge relates at some length the reasons that controlled him in arriving at the conclusion he did.
The trial judge says:
“I do not believe that the deceased made any hostile demonstration against the accused. There was no overt act shown to my satisfaction. I accepted as true the account of the killing as testified to by Adolphe Lognon, Euzede Pellerin, and Ernest Rodriguez before the coroner on the day of the killing.
“Their testimony given then is attached.”
To the extent that the testimony of a witness before us in general may discredit testimony of a witness who testified before the coroner it may be admitted. State v. Mulholland, 16 La. Ann. 376.
There is nothing before this court which *522 would justify it in reversing this ruling. The only ruling on this branch of the subject with which we do not find it possible to agree is that in which the court stated its inference and did not dictate the facts. It is a matter of form i. e., dictation of the facts — with which we think there should be compliance in view of the language of the statute cited, supra.
There was no error under the circumstance in consulting the testimony taken before the coroner; it having been admitted without objection as impeaching testimony.
Discretion properly exercised:
The objection to the court’s ruling in declining to permit the defense to propound the question to a witness after the defense had had every opportunity to propound the question does not present a ground of objection in view of the circumstances stated.
“Courts are therefore agreed that in the trial court’s discretion evidence may be subsequently admitted.” Wigmore, § 1876. (Italics ours.)
It is a question of discretion. It appears as having been properly exercised.
The trial had taken days in examining witnesses. The delays were unusual. The court sought to put an end to them, and refused to permit questions to be propounded regarding new facts after the examination in chief and the cross-examination, had been closed.
Evidence that should have been elicited at first may be refused later because this is but the denial of a second opportunity. Wig-more, § 1873.
The trial judge has the authority reasonably to expedite the trial of eases, to refuse useless, cumulating evidence to be taken, and to avoid the unnecessary consumption of time in examining witnesses.
Charge to the jury:
The last objection urged to the charge and the last bill of exceptions taken shows that defendant requested the following special instruction:
“When one is not himself the aggressor, but is defending his own property from an assailor, he has the right to use as much force as is necessary to prevent its forcible, illegal removal, or his exclusion from its use.”
The court refused to give the charge for the reason that instructions before given fully covered the law applicable to the case. The court had previously charged the jury touching the right of the person assailed on his own premises, also touching the right of self-defense, and regarding an overt act. The general charge and the special instructions covered all the points.
It appears that in the opening argument the prosecuting attorney said that the defendant should not have gone to the scene of the difficulty with his gun, but should have appealed to the law for protection, and that in closing he again alluded to the necessity of men settling their differences in the courts of justice. This, we must say, was entirely correct.
There was complaint urged to the said utterance of the prosecuting officer which the trial judge properly did not sustain.
The case will be heard again. Our brother of the district court, on the second trial, will give such instructions on the facts as the facts will warrant.
The case will have to be remanded. For that reason we do not think that we should extend the discussion further.
The law and the evidence being with the defendant, it is ordered, adjudged, and decreed that the verdict and the judgment are avoided, annulled, and reversed. It is further ordered that a new trial is granted, and the case is remanded to be tried in accordance with law.
NIGHOLLS, J., concurs in the decree.
PROVOSTS and MONROE, J.T., concur in the decree, but dissent from the opinion.
See concurring opinions of PROYOSTT, and LAND, JJ., 40 South. 443.