(83 South. 844)

No. 23543.

STATE v. COLL.

(Nov. 3, 1919. Rehearing Denied Feb. 2, 1920.)

*(Syllabus by Editorial Staff.)*

1. CRIMINAL LAW ⬤⇒594(1) — CONTINUANCE FOR ABSENCE OF WITNESS PROPERLY DENIED.

Defendant, who had eight or ten witnesses present, was not entitled to continuance for absence of four of his witnesses, for whom summons had been timely placed in the hands of the sheriff, where he had not complied with Act No. 67 of 1894, requiring written application to the judge for permission to summon more than six witnesses.

2. CRIMINAL LAW ⬤⇒448(12)—QUESTION AS TO STATEMENT MADE BY DEFENDANT NOT OBJECTIONABLE AS CALLING FOR AN OPINION.

In homicide prosecution, question as to what defendant had told witness before the killing, "showing that he had hard feelings against deceased," *held* not objectionable as calling for an opinion; its purpose, as shown by answer that accused had said that he would kill deceased if he did not quit interfering with his

business, being to prove that a statement was made by accused, and not to elicit an opinion.

3. WITNESSES ⬤⇒240(8) — QUESTION OBJECTIONABLE AS LEADING.

In homicide prosecution, question as to "whether or not the defendant was angry with M.," deceased, "because he (defendant) claimed that M. was interfering with his (defendant's) business," *held* objectionable in form, being leading.

4. CRIMINAL LAW ⬤⇒448(11) — EVIDENCE OF ANGER NOT OPINION.

The condition of a man as to his being angry or not is a matter of observation or fact, not of mere opinion.

5. CRIMINAL LAW ⬤⇒1170½(1) — ASKING LEADING QUESTION NOT REVERSIBLE IN ABSENCE OF PREJUDICE.

A verdict will not be set aside because court allowed a leading question to be asked, unless the accused has been prejudiced thereby.

6. CRIMINAL LAW ⬤⇒1170½(2) — LEADING QUESTION AND ANSWER NOT PREJUDICIAL BECAUSE OF SIMILAR EVIDENCE.

Court's action in permitting a leading question to be asked is not ground for reversal, where the answer of the witness was the same as other testimony given.

7. HOMICIDE ⬤⇒169(8)—TESTIMONY THAT DECEASED HAD REPORTED IRREGULARITIES BY DEFENDANT TO HIS EMPLOYER RELEVANT.

In a homicide prosecution, testimony of witness for whom defendant and deceased had both worked that deceased had reported certain irregularities on the part of the defendant *held* admissible, where such reports led to the killing.

8. CRIMINAL LAW ⬤⇒419, 420(2)—TESTIMONY OF WITNESS FOR WHOM DECEASED AND DEFENDANT HAD BEEN WORKING THAT DECEASED HAD REPORTED IRREGULARITIES BY DEFENDANT NOT HEARSAY.

In a homicide prosecution, testimony of witness for whom both defendant and deceased had been working that deceased had reported irregularities by defendant *held* not objectionable as hearsay, being testimony as to an independent fact which the witness was acquainted with from his own observation.

9. HOMICIDE ⬤⇒156(1)—FACTS SHOWING INTENT ADMISSIBLE.

In a murder prosecution facts going to show intent can be testified to.

10. CRIMINAL LAW ⬥417(2), 419, 420(1) — HOMICIDE ⬥192—TESTIMONY OF WITNESS FOR WHOM BOTH DECEASED AND DEFENDANT WORKED THAT DECEASED HAD TENDERED RESIGNATION BEFORE KILLING ADMISSIBLE.

In a homicide prosecution, testimony of witness for whom both defendant and deceased worked that deceased tendered his resignation prior to the shooting *held* admissible, in view of testimony that defendant had made threat to kill deceased if he did not stop interfering with defendant's business, being admissible on question of who was the aggressor, and therefore neither hearsay nor irrelevant, nor merely a statement made out of the presence of the accused.

11. WITNESSES ⬥291—RECROSS-EXAMINATION DISCRETIONARY WITH COURT.

The allowing of a question to be put to defendant's witness by the state, after he had been cross-examined and re-examined by the defense, was a matter within the discretion of the trial court.

12. HOMICIDE ⬥187—TESTIMONY AS TO DEFENDANT BEING STRONGER THAN DECEASED ADMISSIBLE WHERE KILLING FOLLOWED FIGHT OVER A PISTOL.

In prosecution of a man in the prime of life for murder of a man 72 years of age, where defense had introduced evidence that accused and deceased were of nearly the same size, and where killing had not been merely a pistol duel, but had followed a fight between the two for possession of a pistol, testimony as to whether defendant was not a much stronger man than deceased *held* admissible.

13. CRIMINAL LAW ⬥448(12)—QUESTION AS TO WHAT DECEASED HAD DONE OR SAID TO AVOID DIFFICULTY DID NOT CALL FOR AN OPINION.

In a homicide prosecution, question as to what deceased had done or said "to avoid the difficulty" *held* not objectionable as calling for an opinion.

14. WITNESSES ⬥277(2) — CROSS-EXAMINATION OF DEFENDANT IN HOMICIDE PROSECUTION PROPER.

In homicide prosecution, where defendant had testified that shortly before the killing he had accidentally shot another person, question as to what defendant had been doing with the gun when he shot such person *held* proper cross-examination.

15. WITNESSES ⬥277(4) — CROSS-EXAMINATION OF ACCUSED AS TO MATTER NOT TESTIFIED TO IN CHIEF IMPROPER.

In prosecution of alcohol distillery still man in charge of still room for killing of head watchman, question to accused as to whether the head watchman had a right to go to all parts of the building *held* not proper cross-examination, where such matter was not testified to in chief.

16. CRIMINAL LAW ⬥1170½(5) — IMPROPER CROSS-EXAMINATION HARMLESS.

In prosecution of alcohol distillery still man for killing of head watchman, improper cross-examination of accused as to whether the watchman had a right to go to all parts of the building *held* harmless, since such fact was easily susceptible of proof by the manager and other witnesses.

17. CRIMINAL LAW ⬥400(1)—QUESTION TO MANAGER OF DISTILLERY AS TO NOTICES POSTED APPLICABLE TO DECEASED PROPER.

In prosecution of alcohol distillery still man for murder of head watchman, where defendant had testified that certain notices prohibiting parties from visiting still room applied to deceased, question to manager of distillery as to whether notices applied to watchman *held* proper as against objection that the notices spoke for themselves.

18. CRIMINAL LAW ⬥1122(5) — REFUSAL TO GIVE REQUESTED INSTRUCTIONS NOT CONSIDERED IN ABSENCE OF GENERAL CHARGE IN RECORD.

Refusal to give requested charges will not be reviewed on appeal, where claimed to be covered by general charge, and general charge is not brought up before appellate court.

19. HOMICIDE ⬥112(2), 276—EVERY ACT OR INSULTING WORD OF DEFENDANT NOT SUFFICIENT TO MAKE HIM AN AGGRESSOR.

It is not every act or insulting word of a defendant that makes him an aggressor; the question depending on the character of the act and intentions of the defendant, and to be determined by the jury.

20. CRIMINAL LAW ⬥829(1) — REFUSAL OF REQUEST NOT PREJUDICIAL WHERE COVERED BY GENERAL CHARGE.

Refusal of requested charge was not prejudicial error, where the substance thereof was covered by the general charge.

21. HOMICIDE ⬥300(10)—REQUESTED CHARGE ON SELF-DEFENSE PROPERLY REFUSED.

In a homicide prosecution, requested instruction that a man whose life is threatened is not required by law to avoid meeting his adversary, and may go wherever he has a right to go, though he knows in doing so he will meet such adversary, *held* properly refused under evidence that accused had threatened deceased

and killed him without any overt act or word on part of deceased.

**22. CRIMINAL LAW ⊂⊃1111(1) — SUPREME COURT GUIDED BY PER CURIAM OF JUDGE IN ABSENCE OF STATEMENT OF FACTS.**

In the absence of a statement of facts, under Act No. 113 of 1896, the Supreme Court on appeal from judgment of conviction must be guided by the per curiam of the judge.

O'Niell and Dawkins, JJ., dissenting.

Appeal from Twelfth Judicial District Court, Parish of Vernon; John H. Boone, Judge.

Jack Coll was convicted of murder, without capital punishment, and he appeals. Affirmed.

Monk & Ford, of Leesville, and Foster, Looney & Wilkinson, of Shreveport, for appellant.

A. V. Coco, Atty. Gen., Thomas W. Robertson, Asst. Atty. Gen., of Shreveport, and W. M. Lyles, Dist. Atty., of Leesville, for the State.

PROVOSTY, J. The accused had been convicted of murder without capital punishment, and sentenced to the penitentiary for life.

He objected to going to trial, on the ground that four of his witnesses for whom summons had been timely placed in the hands of the sheriff were not present, and that no return had been made by the sheriff on the summons.

The judge says in his per curiam that eight or ten of the witnesses summoned by accused were present, and that accused had not used due diligence by complying with Act 67, p. 78, of 1894, which provides that—

"In all criminal cases on final trial each side shall not be allowed to summon more than six witnesses, unless the district attorney or other * * * counsel, as the case may be, shall present a written application to the judge," etc.

[1] In State v. Guillory, 45 La. Ann. 31, 12 South. 314, it was held that failure of an accused to comply with this statute disentitles him to the presence of absent witnesses,

when more than six have been summoned and six are present. And nothing contrary to this appears in the following cases relied upon by the learned counsel of defendant: State v. Nathaniel, 52 La. Ann. 558, 26 South. 1008; State v. Rodriguez, 115 La. 1005, 40 South. 438; State v. Anderson, 135 La. 327, 65 South. 478; and State v. Curtis, 138 La. 911, 70 South. 878. What was held in these cases was: In the Nathaniel Case, that the said statute is constitutional; in the Rodriguez Case, that the judge could rightly refuse to authorize the summoning of more than six character witnesses from another parish; in the Anderson Case, that the "bare fact" that the state had summoned more than 15 witnesses did not entitle the accused to a continuance; and, finally, in the Curtis Case, that when an accused has "done all that the law demands of him to entitle him to have his witnesses summoned," he is entitled to have before going to trial a return of the sheriff showing whether the summons have been served or not.

The bills 3, 4, 5, and 6 were reserved to rulings in connection with the acceptance or rejection of the jurors. The per curiams of the judge show them to be without merit; and counsel recognize that when the facts have not been taken down by the clerk as provided for by Act 113 of 1896 this court must be guided by the statement of the judge.

[2] The homicide took place at an alcohol distillery. Deceased was head watchman, and was 72 years old. Accused was the still man, in charge of the still room, or room where the alcohol was manufactured. He was in the prime of life, and a stronger man than deceased. A witness was asked:

"What did Jack Coll [accused] tell you before the tragedy showing that he had hard feelings against deceased?"

The question was objected to as aimed at the opinion of the witness; but evidently its purpose was to prove some statement made

by the accused in the hearing of the witness, and not to elicit an opinion, as is shown by the answer, which was that—

"Accused said that, if deceased did not quit interfering with his business, he would kill the old s—— of a b——."

Another question objected to was:

"State whether or not the defendant was angry with Mr. Middleton [the deceased] because he (defendant) claimed that Middleton was interfering with his (defendant's) business."

[3-6] The ground of objection was that the question called for the opinion of the witness, and was suggestive of the answer. The question was objectionable in form, being leading, but the condition of a man as to his being angry or not is a matter of observation or fact, not of mere opinion. A verdict will not be set aside because a leading question has been allowed to be asked, unless the accused has been prejudiced thereby. State v. Lyons, 113 La. 959, 37 South. 890; State v. Williams, 111 La. 205, 35 South. 521. In the present instance the accused was not prejudiced, since the answer of the witness was the same as that to the question just dealt with hereinabove.

The manager of the distillery was asked:

"Mr. Dennee, I will ask you whether or not Mr. Middleton, in the course of his employment, reported certain irregularities at the still on the part of the defendant, and whether or not you had such occurrences with this defendant."

[7, 8] This was objected to:

"First, because it is irrelevant; second, because it is hearsay; and, third, because the statements in question were not in the presence of the accused."

The judge in his per curiam says:

"The accused himself was permitted without objection to testify about the reports made to Mr. Dennee, the manager, by deceased. Middleton was the man killed. He had reported irregularities to Dennee, the manager, and these reports evidently caused the killing. Mr. Den-nee in answer to the question merely stated the reports of irregularities were made to him by Middleton, the deceased, in the discharge of his duty, and then approached and conferred with accused about the matter. The witness never stated what the irregularities were."

[9] The fact of these reports having been made was not irrelevant, since it was what led to the killing; and it was not hearsay, since it was an independent fact which the witness was acquainted with from his own observation. If the accused had been on trial for the irregularities in question, any statement made by Middleton to the witness with regard to these irregularities would have been hearsay; but the purpose of the question on the present trial was to show intent by proving that the reports were made, and that the fact of their having been made was communicated to the accused by the manager, and caused him to become angry with the deceased. Facts going to show intent can certainly be testified to.

[10] Another question objected to on the same grounds of irrelevancy, hearsay, and "made out of the presence of the accused" was:

"I will ask whether or not Mr. Middleton tendered his resignation prior to this shooting?"

If this resignation was tendered just prior to the fatal encounter, and especially just after the deceased had been informed of the threat made by accused to kill him (and nothing in the bill shows that such was not the case), the fact of the resignation having been tendered would in itself, independently altogether of the words in which the tender was made, have a direct and most important bearing upon the vital question of who was the aggressor in the conflict, and therefore be neither hearsay, nor irrelevant, nor merely a statement made out of the presence of the accused.

Another question objected to was:

"Is it not a fact that the defendant here is a much stronger man than the man that was killed?"

This question, says the bill—

"was objected to for the reason that defense examined the witness in chief, the prosecution cross-examined him, and the defense had re-examined him and excused him, and that there-upon the district attorney propounded the question above. The testimony was also objected to on the ground that it was irrelevant, and was an effort on the part of the prosecution to prejudice the jury against the defendant, and furthermore it involves an opinion of the witness."

[11] The allowing the question to be put to the witness after he had been cross-examined was a matter within the discretion of the trial judge. The judge in his per curiam says:

"Accused is a man in the prime of life, and deceased was a man 72 years of age, and the evidence was that accused said to deceased, 'I will take your pistol away from you and kill you with it, and thereupon grabbed deceased, and they tussled over the pistol, and immediately accused shot and killed deceased. The evidence had been elicited by counsel for accused that the accused and deceased were near the same size. The evidence was clearly relevant, and the court thought it proper testimony. The witness had not been excused at the time the question was asked."

[12] Under these circumstances the evidence was admissible. The argument contra is that the size and physical strength of combatants are immaterial in a pistol duel; but the "duel" in this case was not with pistols only.

[13] Another question objected to as calling merely for the opinion of the witness was:

"What did the deceased do or say to avoid the difficulty?"

To this question, says the judge in his per curiam—

"the witness answered that, when deceased went up into the distilling room, where accused had just shot a negro accidentally, and accused ordered him down, he turned and started down; that accused went up behind him and gave him a push, saying in effect, 'Get down from here; did I not tell you not to come up here?' and deceased answered back something he did not understand, but did not curse accused, and at the time of the killing deceased did not draw his pistol and did not curse accused. The court instructed the witness to state what deceased did say at the time in the presence of accused."

Here again the question sought to elicit facts, and not mere opinion.

[14] Another question objected to as irrelevant was:

"What were you doing with the gun when you shot the negro?"

The judge in his per curiam says:

"The accused, Jack Coll, had stated in his testimony in chief that a very short while, an hour or such a matter, before the killing, he had shot a negro accidentally; hence the above question was to elicit other facts as to matter brought out by him and was admissible. The evidence had already shown that in his deportment that morning he was intoxicated and had his pistol out and accidentally shot a negro."

We are not advised why the accused referred to this accidental shooting of a negro, but the inference must be that it was for some purpose in the case, and we must assume that the cross-examination was for counteracting that purpose.

Another question objected to was:

"Mr. Middleton was the head watchman, and had a right to go to all parts of the building, did he not?"

[15, 16] This question was objected to because relating to a matter not germane to the matters testified to in chief, and as seeking to elicit the opinion of the witness. The object of the question was not to elicit an opinion, but to make proof of the fact that the deceased was head watchman, and as such had a right to go to all parts of the building; but as, so far as appears, this fact was not testified to in chief, the allowing of the question on cross-examination was improper. However, as that

fact was easily susceptible of proof by the manager, and doubtless by other witnesses, the allowing the proof of it to be made thus irregularly on the cross-examination of accused cannot have prejudiced, and hence is not reversible error.

[17] The accused having testified that certain posted notices "prohibiting parties from visiting the still room" applied to the deceased, the head watchman, the manager of the distillery was asked whether this was so; and the question was objected to on the ground that the notices had to speak for themselves, and could not be allowed to be interpreted by the witness. The objection can hardly have been seriously made.

The following special charges were asked to be given to the jury:

"No word or gesture, however insulting, will deprive the person using the word or making such gesture of the right of self-defense when the latter has been assaulted in a manner that imperils his life."

"If you find that the evidence is conflicting, and by reason of that fact you have a reasonable doubt as to what the truth is, you should solve such a doubt in favor of the defendant."

[18] These charges were refused to be given as being covered by the general charge. The general charge not having been brought up, we are not in a position to review the ruling.

The following also was asked to be specially charged, and was refused:

"It is not every act or insulting word of a defendant that makes him an aggressor. This depends on the character of the act and intentions of the defendant. This is a fact to be determined by you."

The learned trial judge says in his per curiam:

"This requested charge was not applicable in any respect to the facts of the case, but the court made the charge full and plain to the jury as to the aggressor and as to self-defense."

[19, 20] This requested charge is not as clearly worded as it might be, but is clear enough to indicate that it covers the same ground as the special charge secondly above transcribed, and simply enunciates an elementary proposition of the law of self-defense, which a trial judge would hardly fail to include in his general charge in a case where insulting language from the accused constitutes part of the res gestæ. In assigning, therefore, as his reason for refusing to give this charge that it was inapplicable to the facts of the case, our learned brother must have misconstrued it. But thereby the accused was in no wise injured, since the substance of the charge was covered in the general charge.

The following special charge was asked to be given, and was refused:

"A man whose life is threatened is not required by law to avoid meeting his adversary, and he may go wherever he has a right to go, even though he knows in doing so he will meet such adversary."

The judge states the reason for his refusal as follows:

"The above charge has no application to the facts of the case. Accused had threatened deceased, according to the evidence, and went to deceased when deceased was talking to another man and killed deceased without any overt act or word on the part of deceased. And the evidence did not show that deceased had ever threatened accused."

[21, 22] The facts being as here stated, the ruling was correct; and, in the absence of a statement of facts under Act 113 of 1896, this court must be guided by the per curiam of the judge.

Judgment affirmed.

O'NIELL and DAWKINS, JJ., dissent.