442 So.2d 703 (1983)
STATE of Louisiana
v.
Roger GONDAY.
No. 83 KA 0379.
Court of Appeal of Louisiana, First Circuit.
November 22, 1983.
*704 Brett Grayson, Asst. Dist. Atty., 19th Judicial District of Louisiana, Baton Rouge, for plaintiff-appellee.
Lewis O. Unglesby, Baton Rouge, for defendant-appellant.
Before SHORTESS, LANIER and CRAIN, JJ.
CRAIN, Judge.
Roger Gonday was charged by grand jury indictment with manslaughter in violation of La.R.S. 14:31. He pled not guilty and waived his right to a jury trial. The trial court found him guilty as charged and sentenced him to be confined in the custody of the Department of Corrections for a term of five (5) years at hard labor without benefit of probation, parole or suspension of sentence, pursuant to La.R.S. 14:31 and La.C.Cr.P. art. 893.1. The trial court also sentenced him to serve a period of two years at hard labor without benefit of probation, parole or suspension of sentence or credit for good time, pursuant to La.R.S. 14:95.2. The two year sentence is to run consecutive to the five year sentence. Defendant lists eight assignments of error resulting from allegedly incorrect rulings by the trial court.
We reverse.
ASSIGNMENTS OF ERROR NUMBERS 1 and 8:[1]
In his first assignment of error, defendant contends that the trial court *705 erred in failing to properly apply La.R.S. 14:18, 14:20, 14:21 and 14:22. Essentially, defendant argues that there was no evidence to enable the trial court to find that the state proved the homicide was not justified. Defendant claims the homicide was committed in defense of a third person. Defendant properly raised the no evidence question in a motion for new trial which asserted that the verdict was contrary to the law and the evidence.[2]State v. Peoples, 383 So.2d 1006 (La.1980).
At approximately noon on November 2, 1981, defendant and Russell Williams were riding in defendant's truck with defendant driving when another truck driven by the victim, Homer Martin, III, (Martin) struck defendant's vehicle. Martin did not stop after the accident. Defendant made Martin stop by chasing him and forcing him off the road into a paved parking area in front of a business establishment named Cayard's. After Martin stopped, defendant stopped his truck in the roadway to the left side of Martin's truck. Williams exited defendant's truck and walked up to the driver's side of Martin's truck.
The evidence at this point is from an alleged dying declaration of Martin admitted into evidence by the trial court.[3] Martin stated he observed Gonday standing on the far side of his truck holding a shotgun instructing Williams to "make him turn the motor off." Martin told Williams to "tell him to put that shotgun down." Williams was again instructed to "get his keys". Either Williams or defendant mentioned calling the police. At this point Martin reached for his glove compartment to get his gun because "no one's getting my keys". By the time Martin got his gun out and cocked it, defendant was at his door with the shotgun. Williams stepped aside and defendant shot Martin. Martin felt it necessary to get his gun for protection. He told them all they had to do was put their gun upthat he wasn't going anywhere. Until Martin reached for his gun, defendant was standing with the butt of the shotgun resting on defendant's truck. Defendant did not point the shotgun until after Martin reached for his gun. Martin got his gun when he felt Williams was going to get the keys to his truck.
Even though the testimony of independent witnesses conflicts with Martin's statement, in some instances the physical evidence conflicts with the statement, and there is serious question as to the admissibility of the statement; we use it because in our opinion even the statement produces no evidence to support the conviction.
Clearly, Martin's main concern was not that he was in physical danger from defendant or Williams because he specifically stated that he had not been threatened with the shotgun when he reached for his own gun. He got his gun because he was not going to let anyone get his keys.
On the other hand, defendant saw Martin get his gun and we know from Martin's own statement that he cocked it. Actually, the evidence is much stronger that not only did he cock it, but he tried to fire it and it jammed. The policeman who retrieved the gun testified a bullet had wedged in the chamber causing the gun to jam. Martin *706 told his son at the scene of the incident after he had been shot that "my gun jammed and I put it on the seat." Martin obviously tried to use the gun. By his own statement he cocked it, and defendant at least knew this much.
"It is justifiable to use force or violence or to kill in the defense of another person when it is reasonably apparent that the person attacked could have justifiably used such means himself, and when it is reasonably believed that such intervention is necessary to protect the other person." La. R.S. 14:22. However, "A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict." La.R.S. 14:21.
Martin's statement makes it obvious that the defendant reasonably believed Martin was about to shoot the unarmed Williams when Martin got his gun from the glove compartment and cocked it. The only question is whether defendant can use "defense of another" to justify his killing of Martin or whether he is prohibited from doing so by the aggressor doctrine. La. R.S. 14:21.
Not every act of a defendant will make him an aggressor. It is the character of the act coupled with the intent of the defendant that determines whether the defendant is the aggressor. State v. Coll, 146 La. 597, 83 So. 844 (1919).
The act of aggression which would thereafter preclude asserting the right of self-defense must be such that the response elicited from the victim by the aggressive act can be termed a reasonable response to that act.[4] If a defendant curses a victim and the victim pulls a gun to kill the defendant certainly the defendant is not precluded by the original aggressive act of cursing from killing the victim in order to save his own life. Under these circumstances the victim's response to the aggressive act would be unreasonable.
Although the character of defendant's act in chasing Martin and stopping him after the accident might make him an aggressor for some victim response, Martin knew and admitted knowledge of the fact that the defendant and Williams' intent was to stop him and keep him stopped until the accident could be reported to the police. Martin admitted such when he stated he told them he was not going anywhere. But when Williams and the defendant chose not to believe him because of the prior circumstances and wanted his keys, he was absolutely adamant that if necessary he would kill rather than allow anyone to take his keys. His concern was not over his physical well-being but his keys. Consequently, he knew defendant's intention and the character of his acts was not a reasonable response to the aggressive action taken towards him. We hold that under these circumstances, which are supported by the only evidence in the record, neither defendant nor Williams were aggressors which would preclude defendant from taking the necessary action to save Williams' life.[5]
We note that although we are required to review the record for sufficient evidence, this record contains no evidence that would support the conviction for manslaughter. Consequently, we reverse the conviction and order defendant released.
REVERSED AND RENDERED.
NOTES
[1] Because of our holding on assignments of error 1 and 8 we do not address the remaining assignments of error.
[2] La.C.Cr.P. art. 821 sets the standard of review where the sufficiency of the evidence is at issue. Accordingly, the principles of appellate review as stated by this court in State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983), are applicable where the question is sufficiency of the evidence. No evidence is still properly raised by a motion for new trial. Although not at issue here we note that since the legislature has established fact review of sufficiency of the evidence through the procedural vehicle of a motion for acquittal, a failure to file the motion could waive defendant's right to review of sufficiency of the evidence, unlike no evidence review which is a question of law.
[3] Martin was shot on November 2, 1981. He died from the gunshot wound fourteen days later. On November 7, 1981, the police took a statement from Martin in the hospital. The foundation laid for taking the statement was a Miranda foundation. There are serious questions as to the admissibility of this statement as a dying declaration. However, because of the result we reach we consider it because it is the only evidence which could possibly be construed to support a conviction.
[4] The Civil law clearly supports this proposition. Tripoli v. Gurry, 253 La. 473, 218 So.2d 563 (1969); Mut v. Roy, 185 So.2d 639 (La.App. 1st Cir.1966); Oakes v. H. Weil Baking Co., 174 La. 770, 141 So. 456 (1932).
[5] This case cannot be analyzed as one involving an aggressor who has withdrawn from the conflict, because the victim did not give Williams or Gonday the opportunity to withdraw. La.R.S. 14:21. However, if Williams is considered the sole aggressor there is no question of his attempt to withdraw since the testimony of all witnesses is that he put his hands in the air and started backing away as soon as Martin went for his gun.