## THE STATE v. DICK.

Art. 107 of the constitution which guaranties to every person accused a speedy public trial by an impartial jury of the vicinage, does not apply to slaves.

Slaves are treated as persons by the criminal law.

A slave may be punished for the murder of another slave, under sec. 11 of the stat. of 7 June, 1806, relating to slaves; or under ss. 1, 2, of the stat. of 7 June, 1806, on the subject of crimes and misdemeanors, nothing in this last act confining it to free persons.

Any objections to a tribunal organized under the stat. of 1 June, 1846, for the trial of a slave, on the ground that it does not appear that the slave owners who sat on the trial were selected by the justices of the peace, nor by either of them, nor that the persons who sat on the trial as slave owners, were slave holders of the parish, must be urged before the persons who sat on the trial are sworn, or they will be considered to have been waived.

APPEAL from a special tribunal organized under the stat. of 1 June, 1846, for the trial of a slave, in the parish of St. Tammany. *Elmore*, Attorney General, for the State. *A. Hennen*, for the appellant. The judgment of the court *(Rost, J.* absent,) was pronounced by

KING, J. The defendant was convicted of the crime of murder alleged to have been committed upon the person of a slave, and has appealed from the sentence pronounced upon him. After the court, composed of two justices and ten owners of slaves, had been sworn and organized, the defendant, by his counsel, excepted to its jurisdiction, on the ground that the law creating the tribunal violated the constitution of the State, which guaranties to all persons an impartial trial by a jury of the vicinage; and that the only jury known to the constitution is one composed of twelve jurors, in the selection of whom the accused is entitled to the right of peremptory challenges. The plea was overruled, and a bill of exceptions taken to the opinion of the court.

The 109th article of the constitution of this State is relied on in support of this position. One of its clauses provides that, "the accused shall have a speedy public trial by an impartial jury of the vicinage." The same provision is found in the constitution of 1812 (art. 6, s. 18), and was taken from the constitution of the United States. Art. 3, s. 2, and Amendments, art. 8. At the time that the constitution of 1812 was adopted, the act of the 4th May, 1805 (sec. 33), introducing the common law method of trial, rules of evidence, and other proceedings in the prosecution of crimes, was in force. The 47th section of the act limited its operation to free persons, and declared that its provisions should not extend to slaves. There also existed a separate Code of laws declaring the offences of slaves, and creating a tribunal for the trial of offenders, composed of the county judge, and not less than three, nor more than five freeholders, in capital cases.

The tribunal provided by this act was several times modified by different acts of the legislature, commencing in 1825 and extending down to 1843; but no one of the amendments accorded to slaves a trial by jury in the sense in which that term is used in the constitution. See Bul. & Cur. Dig. pp. 57, s. 41; 99, s. 1. Acts of 1830, p. 146, § 8: Acts of 1843, p. 91. The article of the Civil Code of 1808 which declared that the rules for the police of slaves and the punishment of their crimes "are fixed by special laws," was also in force when the old constitution was adopted, and has since been incorporated into the Code of 1825. Art. 172.

Thus, from the commencement of our legislation, two distinct methods of trial

have existed, one applying exclusively to free persons, granting them a trial by jury, and the other extending to slaves, to whom a jury has been denied. This distinction existed when the constitution of 1812 was adopted and continued down to 1845, notwithstanding the article which declared that "the accused shall have a speedy public trial by an impartial jury of the vicinage." The uniform interpretation given to that article, by the repeated legislative acts to which we have referred, and by the tribunals at different times created for the trial of slaves, has been, that it does not extend to that class of offenders. The corresponding provision of the constitution of 1845 was adopted with a full knowledge of the interpretation which it had received fore more than thirty years, and we must presume that, in adopting the language of the old constitution, it was intended also to adopt the interpretation which it had previously received. See the cases of *McKee* v. *Ellis*, 2 An. 169, and *Colt* v. *O'Callaghan*, Ib. 190.

The act of 1846, under which the tribunal was organized for the trial of the defendant, in our opinion, stands in no conflict with the constitution. Under its provisions slaves are not entitled to peremptory challenges. They may challenge for cause, but the right must be exercised before the court is sworn. *State* v. *Isaac*, 3 An. 359.

The next position assumed is, that slaves are not treated as persons by our laws. That the statutes providing for the punishment of their crimes are all special, and none of them declare the killing of one slave by another to be murder. The repeated acts of the legislation declaring slaves capable of committing crimes, annexing punishments to their offences, and creating tribunals for the trial of the offenders, must be considered so many recognitions that they are persons. It is difficult to conceive how a crime can be committed by a slave, unless he be considered in law a person. But we are not left to inference on this point. The first section of the Black Code, speaks of slaves as persons. They are classed as persons in the Civil Code, in the title treating "*Of the Distinction of Persons*," and were so classed in the Code of 1808, p. 10, art. 13. They were also held to be persons by the late Court of Errors and Appeals in the case of the *State* v. *Moore*, 8 Rob. 521.

Considered as persons there are at least two statutes under which the offence charged against the accused may be punished. The first is, the 11th section of the Black Code (Bul. & Curry's Dig. p. 59); the second, the act of the 7th June, 1806 (Bul. & Curry's Dig. p. 251), annexing the punishment of death to the crime of murder. There is no clause in the act last referred to confining its operations to free persons.

It is next urged that it has not appeared that the two justices, or either of them, selected the ten slave owners to assist at the trial, nor that the persons who sat on the trial were slave owners of the parish. These objections were not made in the court below. The prisoner has the right to object to the want of qualification of the jurors, and to insist on the tribunal being organized as directed by law. But that objections must be urged before the tribunal is sworn, otherwise they will be considered to have been waived. *State* v. *Isaac*, 3 An. 359.

It has further been objected that, it does not appear that the persons were all sworn. We think that the objection is not sustained by the record.

*Judgment affirmed.*