O’NIELL, Chief Justice.
 

 The defendant stands convicted of the crime of murder and sentenced to suffer the penalty of death. In this appeal from the conviction and sentence he relies upon six bills of exception. When the case was first argued and submitted it was found necessary to remand it to the district court' for a correction of the minutes, to show that the defendant was present in court during every stage of the trial. State v. Peyton, 193 La. 354, 190 So. 579. The minutes have been corrected, and there is no further complaint on that score.
 

 The first bill of exception was reserved to the overruling of a motion to quash the indictment on the ground that there was no written order, signed by the judge and spread upon the minutes, for the jury commission to meet and select the names for the impaneling of the grand jury. The motion to quash was founded upon article 177 of the Code of Criminal Procedure, which provides:
 

 “Every order for the selecting or drawing of jurors shall be in writing, signed by the judge and spread upon the minutes of the court.”
 

 There was no special order for the jury commission to meet in this instance ; but Rule XV of the Rules of Court, which were then in force, required the commission to meet on certain fixed dates, semi-annually, for the purpose of drawing
 
 *688
 
 the grand and petit juries for the regular criminal terms of the court. It was in obedience of that rule, or order, that the jury commission met and selected the names from which the grand jury that indicted the defendant in this case was impaneled. The rules of the court were signed by the two judges in and for the judicial district, and were spread upon the minutes of the court in both of the parishes which formed the judicial district. Rule XV, therefore, was a sufficient compliance with article 177 of the Code of Criminal Procedure, so far as the regular, semi-annual meetings of the jury commission were concerned. Rule XV also made provision for special criminal terms of court, thus: “and said Jury Commission shall meet at such other times as the Court may order.” According to article 177 of the Code of Criminal Procedure, it was necessary to have a special order for the jury commission to meet for the selecting or drawing of jurors at any time other than on the dates stated in Rule XV, and the order had to be in writing, and had to be signed by the judge and spread upon the minutes of the court. What article 177 of the Code of Criminal Procedure means is that an order for the selecting or drawing of jurors is not a valid order unless it is in writing and is signed by the judge and spread upon the minutes of the court. The article does not mean that there must be a special order signed by the judge for the selecting or drawing of jurors at the regular meetings of the jury commission on the dates fixed by a rule of the court, when the rules of the court have been signed by the judge and spread upon the minutes of the court. The motion to quash the indictment in this case, therefore, was not well founded.
 

 The second bill of exception has reference to a ruling by the judge permitting the prosecuting attorney to supplement his opening statement to the jury after the attorney for the defendant had made his opening statement to the jury. The objection urged by the attorney for the defendant, when the prosecuting attorney asked to be allowed to supplement his opening statement, was that such a proceeding would be violative of the order of procedure prescribed in article 333-of the Code of Criminal Procedure; that is, that, after the jury has been impaneled' and the indictment read, the trial shall proceed thus: “The reading of the plea to the-jury; the opening statement of the District. Attorney explaining the nature of the charge and the evidence by which he expects to establish the same; the opening-statement by counsel for the defendant at his option explaining the defense and the evidence by which he expects to prove the-same; the introduction by the District Attorney of all the evidence upon which he relies for a conviction”, etc. That order of procedure, however, is not so sacramental as to forbid the district attorney to correct or supplement his opening statement immediately after counsel for the defendant has -made his opening statement, and before any evidence is offered or any other-proceeding is had, if the district attorney-then discovers that he forgot to mention in. his opening statement certain evidence by-which he expects to establish the charge-against the defendant. That is what hap
 
 *690
 
 pened in this case. There is no indication in the record that the defendant was hampered in his defense in any way by reason of the district attorney’s supplementing his opening statement instead of making the statement complete at the beginning. The case would be different, of course, if the defendant had been put to a disadvantage by the district attorney’s having supplemented his opening statement after counsel for the- defendant had made his opening statement; but that is not the case. When the prosecuting attorney asked for permission to supplement his opening statement he asked also that counsel for the defendant should be given the right to supplement his opening statement if he so desired after hearing the supplemental statement of the prosecuting attorney. The judge stated that counsel for the defendant would be allowed to supplement his opening statement, but he did not see fit to do so. Our opinion is that article 333 of the Code of Criminal Procedure leaves the judge some discretion in a case like this, where the prosecuting attorney has forgotten to mention in his opening statement, certain evidence which he intends to offer. The judge did not abuse his discretion in this instance.
 

 The third bill of exception has reference to an objection made by counsel for the defendant to a question propounded by the prosecuting attorney to the defendant on cross examination. The objection was twofold. The first objection was that the evidence was not mentioned in the opening statement made by the prosecuting attorney. That.objection is disposed of by the fact that the evidence was mentioned in the prosecuting attorney’s supplemental opening statement. In fact that objection was merely a renewal of the objection to the prosecuting attorney’s being allowed to supplement his opening statement to the jury. We have decided already that the objection was not well founded. The other objection which the attorney for the defendant made to the question propounded by the prosecuting attorney to the defendant on cross examination was that the prosecuting attorney was attempting to put in evidence an alleged confession or admission, without having mentioned the evidence in his opening statement to the jury, and without having shown that the alleged confession or admission was a free and voluntary statement. It was said by the attorney for the defendant, in objecting to the testimony, that the prosecuting attorney held in his hand a document purporting to be a statement made by the defendant to the prosecuting attorney soon after the homicide was committed. But the document was not offered in evidence, or referred to by the prosecuting attorney in his questioning of the defendant. The questioning had reference to a knife which the woman who was killed held in her hand during the fatal difficulty. The prosecuting attorney, referring to a conversation which he had had with the defendant in the presence of the sheriff soon after the killing, asked the defendant on cross examination if he remembered that he was asked at the time what had become of the knife which the woman held in her hand during the fatal difficulty. The defendant answered that he did remember that the prosecut
 
 *692
 
 ing attorney had asked him what had become of the knife. The prosecuting attorney then, in the cross examination, asked the defendant: “What did you tell me?” The attorney for the defendant objected to the question, and when the objection was overruled the defendant answered that he did not remember what he had told the prosecuting attorney on the occasion referred to, as to what had become of the knife. That was the end of the cross examination on that subject. If the objection of the attorney for the defendant was ever well founded it ceased to be so when the defendant answered that he did not remember what he had told the prosecuting attorney had become of the knife which the woman who was killed held in her hand during the fatal difficulty. Hence the third bill of exception is not well founded.
 

 The fourth bill of exception was taken to a statement made by the prosecuting attorney in his closing argument to the jury. It is said in the bill of exception and in the brief for the appellant that the statement was: “Gentlemen, there is but one verdict which you can' render, and that is ‘guilty as charged’.” In a motion for a new trial the statement was declared to have been: “Gentlemen, under your oath in this case, there is but one verdict which you can render, and that is ‘guilty as charged’.” The judge, in his statement per curiam, says that his impression at the time was that the prosecuting attorney used the word “evidence” instead of the word “oath”, . from which we infer that the judge’s impression was that the prosecuting attorney said that the only verdict which the jury could render, under the evidence, was “guilty as charged”. If that was the statement of the prosecuting attorney it was merely his interpretation of the evidence, and was not an improper method of argument. The statement was not recorded by the clerk or stenographer, but from the quotation of it in the brief for the appellant we take it that the prosecuting attorney did not use the expression “under your oath”, which might be considered a misstatement of the law. But whatever harm might have been done in that way was undone by the judge’s instructing the jury when the objection was made that they should take the evidence from the witnesses and the law from the judge and not from the attorneys in the case, and by the judge’s instructing the jury in his final charge to disregard the remark which had been made by the prosecuting attorney, and which had been objected to by the attorney for the defendant. The fourth bill of exception, therefore, is of no avail.
 

 The fifth bill of exception was reserved to the refusal of the judge to give five special charges requested by the attorney for' the defendant. It is admitted that the special charge numbered 4. to the effect that the penalty for the verdict of guilty without capital punishment was life imprisonment, was included in the judge’s general charge to the jury. Hence the appellant has abandoned his complaint of the refusal of the judge to repeat that charge as a special charge to the jury.
 

 Special charge numbered 1 was this:
 

 “If you should have a reasonable doubt on the question of which one of two ver
 
 *694
 
 diets you might render you should resolve the doubt in favor of the accused and render the verdict most favorable to him.”
 

 In the statement per curiam on this bill of exception the judge says that the reason why he did not give this special charge, numbered 1, is that it required explanation and that it was covered by his general charge; and he says that in his general charge he enumerated the verdicts that would be responsive to the indictment, and stated what penalty was prescribed by law for each verdict; and he says that he instructed the jury that before they could find the defendant guilty of any crime included in the indictment they should be convinced beyond a reasonable doubt of his guilt of that particular crime. The judge’s charge to the jury is not in the record, for the reason that he was not requested to give a written charge. In such a case the statement per curiam that a special charge requested by the defendant was included in the general charge which the judge gave to the jury must be accepted as true. State v. Coll, 146 La. 597, 83 So. 844. Hence we find no error in the judge’s refusal to give the special charge numbered 1. Whether it did or did not require qualification, as written, is a matter of no importance.
 

 The special charge numbered 2, which was refused by the judge was worded thus:
 

 “You have an absolute right to qualify your verdict, and a qualified verdict is not a compromise verdict, but is one which is entirely proper and responsive to the charge of murder.”
 

 In the statement per curiam the judge says that this special charge, numbered 2, needed qualification and explanation, and that, in his general charge, although he did not use the word “absolute” or “compromise”, he explained to the jury that in all murder cases the jury had the right to render a verdict of “Guilty as charged without capital punishment”, and that he stated what the penalty would be for such a verdict. That was a sufficient charge on the subject. It was not necessary for the judge to repeat the charge in the form asked for by the attorney for the defendant. It is true that, in State v. Bacon, 138 La. 654, 70 So. 572, it was said that the jury, in any murder case, had the absolute right to qualify their verdict of guilty by adding thereto “without capital punishment”, without violating their oath, even though there was no extenuating circumstance. But that was said in condemnation of a statement made by the district attorney in his argument to the jury, to the effect that their right to qualify their verdict did not mean that they were, to arbitrarily disregard their oath. If the judge, in this case, had made any such statement or any such suggestion in his charge to the jury the verdict would have to be set aside. But, under the facts in that respect, State v. Bacon would not' stand as authority for setting aside the verdict in this case.
 

 The special charge numbered 3, which the judge refused to give, was this:
 

 “The fact that the homicide occurred on the premises owned by white people and not owned by negroes should have no effect in your arriving at a- verdict.”
 

 
 *696
 
 It is said in the statement per curiam that there- was nothing in the evidence or in the arguments suggestive of prejudice on account of race or color, or requiring such a charge as that which the judge refused to give. That being the case the judge was right in refusing to give the charge. We do not see how the jury could have needed to be informed that the color or race of the owners of the premises on which the homicide was committed should not be allowed to affect their verdict.
 

 The special charge numbered 5, which the judge refused to give, was this:
 

 “The number of times that the accused cut the deceased is not an element to be considered in determining whether the crime — if one was committed — was manslaughter or murder.”
 

 The judge says in his per curiam that he explained fully in his general charge the difference between murder and manslaughter. He says also that there was no special feature of this case that required him to give the special charge numbered 5. Without knowing more of the facts of the case we are not assured that the number of times the defendant cut the deceased should not have been considered by the jury in determining whether the crime which was committed — if one was committed — was murder or manslaughter.
 

 Our conclusion is that the fifth bill of exception is not well founded.
 

 The sixth bill was reserved to the overruling of a motion and supplemental motion for a new trial. The original motion was merely a renewal of the complaints that were made in the bills of exception which we have passed upon. In the-supplemental motion it was alleged that the foreman of the jury, namely, T. W. McDonald, was a resident of Ouachita Parish,, and had not been a resident of MorehouseParish for a year next preceding his serving on the jury in this case. Among the-qualifications required for jury service, in-, article 172 of the Code of Criminal Procedure, is that the juror shall be “a bona, fide resident of the parish in and for which the court is holden, for one year next preceding such service”. The testimony taken on the hearing of the supplemental motion for a new trial does not prove that T. W. McDonald was not a bona fide resident of Morehouse Parish at the time of the trial of this case, or that he was not a bona fideresident of the parish during all of the year preceding the trial. He was registered on the poll books as a voter in the parish and', voted there during three or four years preceding the date of the trial. He was employed as assistant manager of a business-establishment in Bastrop, which is the parish seat, and he worked there in that capacity,, continuously, for a period exceeding fourteen months immediately preceding the date-of the trial of this case. During the first ten and a half months of that period he resided with his brother, in Bastrop, until the - residence was destroyed by fire. That was. less than four months previous to the triaf. of this case. Meanwhile the wife of T. W. McDonald was living in a residence which he and his brother had bought for their-mother, in Monroe, in Ouachita Parish,» which is the adjoining parish in the judi—
 
 *698
 
 cial district. T. W. McDonald rented a house in Bastrop about a month before the trial of this case and he and his wife immediately moved into the house and were residing there, in Bastrop, at the time of the trial of the supplemental motion for a new trial. The reason why it is contended that T. W. McDonald was not a bona fide resident of Morehouse Parish up to about a month before the trial of this case is that his wife was living then in Monroe, in the home of his mother, who was a widow and was very ill. She died about ten months before the trial of this case; but it appears that the wife of T. W. McDonald continued to reside there, in Monroe, up to a month before the trial of this case. T. W. McDonald spent two or three nights there in every week until his brother’s house in Bastrop burned down, and thereafter he spent nearly every night in the Monroe residence until a month before this suit was tried. In so far as McDonald’s spending so many nights in Monroe affected his being a bona fide resident of Bastrop, the prosecuting attorney invokes article 355 of the Code of Criminal Procedure, — which provides:
 

 “The incompetency of a juror, from whatever cause arising, must be urged before the juror is sworn in, and can not be set up for the first time after verdict unless the juror should have answered falsely on his examination as to the special disqualification subsequently set up by the accused.”
 

 In this case the attorney for the defendant did not question T. W. McDonald on his voir dire with reference to his being a bona fide resident of the parish, notwithstanding the attorney was for at least two years well acquainted with Mr. McDonald, whose place of employment was across the street from the office of the attorney’s law firm, and who was often in the office of the law firm. Article 355 of the Code of Criminal Procedure, adopted in 1928, is only a restatement of the law which had been established by the jurisprudence before the Code was adopted. State v. Dick, 1849, 4 La.Ann. 182; State v. Nolan, 1858, 13 La.Ann. 276; State v. Bower, 1874, 26 La.Ann. 383; State v. Sopher, 1883, 35 La.Ann. 975; State v. Button, 1898, 50 La.Ann. 1071, 23 So. 868 69 Am.St.Rep. 470; State v. Foster, 1922, 150 La. 971, 91 So. 411; State v. Lewis, 1926, 161 La. 696, 109 So. 391. The attorney for the appellant argues that his fail-' ure to ask the juror on his voir dire any question about his place of residence is a matter of no importance because, after all, of the jurors were examined on their voir dire and were accepted by both sides, the judge stated to the jury the qualifications which the law requires of a juror, including his being a resident of the parish for at least one year, and the judge then asked the jurors whether they lacked any of those qualifications, and not one of them replied, or stated that he lacked the qualification of having been a resident of the parish for at' least a year. But, in the case of State v. Lewis, which we have cited, where the juror, on his voir dire, was asked if he knew of any reason why he could not serve as a juror, and the juror answered that he did not know of any such reason, it was held that the defendant could not complain after conviction that the juror was a non
 
 *700
 
 resident of the parish, because he was not asked specifically, on his voir dire, whether he was a resident of the parish. That decision is authority also for the proposition that a temporary absence of a juror from the parish for only a brief period during the year preceding his serving as a juror is not a disqualification for jury service.
 

 The verdict and sentence are affirmed.