I So.2d 541

**STATE v. SIMS et al.**

No. 36076.

March 3, 1941.

Rehearing Denied March 31, 1941.

J. B. Dawkins, of Monroe, for appellants.

Eugene Stanley, Atty. Gen., Niels F. Hertz, Asst. Atty. Gen., and Frank W. Hawthorne, Dist. Atty., and George W. Lester, Asst. Dist. Atty., both of Monroe, for the State.

ODOM, Justice.

Herman Sims, Bonnie Prestige, and John Dillon were charged in a bill of information with the larceny of an automobile valued at $275. John Dillon pleaded guilty. The other defendants were tried, convicted, and Bonnie Prestige was sentenced to hard labor for a period of one to three years.

After his conviction in this case, Herman Sims was charged as a third offender, under Act 15 of 1928, and, when arraigned, pleaded guilty. He was sentenced to hard labor for 20 years. The defendants appealed.

The errors of which appellants complain are set forth in five bills of exception, four being reserved to rulings of the trial court made during the progress of the trial and the fifth to the refusal of the court to grant a new trial.

These defendants and John Dillon were charged as principals, under Act 120 of 1932, which provides:

"That the distinction heretofore existing between principals and accessories before the fact is hereby abolished. * * *

"That any person concerned in the commission of a crime, whether he directly commits the act constituting the offense or

aids and abets in its commission, and whether present or absent, and a person who directly or indirectly counsels, commands, induces or procures another to commit a crime, is a principal, and he shall be indicted, tried and punished as such."

When John Dillon was arrested, he confessed and subsequently pleaded guilty. In a signed statement he set out the facts and circumstances connected with the theft of the car, which in substance were that he, Herman Sims, and Bonnie Prestige met in a hotel room in Monroe, and agreed that he, Dillon, should steal an automobile and that on the following day the three should go to Arkansas in the car; that he stole the car according to plan and that the three went to El Dorado, Arkansas, in the car, and that he and the defendant Sims sold certain parts of the car and divided the proceeds. The defendant Bonnie Prestige made a similar statement but denied that she received any of the proceeds of the sale.

In his opening statement to the jury, the district attorney stated that he expected to prove that the three had entered into a conspiracy to steal the car and that their plans were carried out; that John Dillon physically took the car and carried it away, and that the defendants Herman Sims and Bonnie Prestige were guilty of the crime as principals, under Act 120 of 1932, because they were concerned therein and aided, abetted, and counselled its commission.

Counsel for defendants made no opening statement to the jury, but his theory seems to have been that, in as much as Herman Sims and Bonnie Prestige did not participate in the physical taking of the car and were not present when Dillon took and removed it, they were not guilty of the crime of larceny.

In his per curiam to Bill No. 4, the trial judge stated the facts to be as follows:

"The defendants were charged as principals under Act 120 of 1932. The defendants and Dillon met and it was agreed and arranged that Dillon would steal a car in which all three of them would go to Arkansas. Dillon got the car and all three of them went in the car to El Dorado, Arkansas. There they sold some parts of the car and divided the money received."

It is not suggested by counsel for defendants that the judge erred in his statement of the facts.

John Dillon, who had entered a plea of guilty but who had not been sentenced, was called as a witness by the State. He was asked whether he knew the defendant Herman Sims, and he said he did. Asked how long he had known him, he said, "About two years." He was then asked, "Where did you first meet the defendant?" And he answered, "In the penitentiary." Whereupon, according to the bill, "Defendants' Counsel objected as said question was irrelevant and immaterial and asked the Court to instruct the jury to disregard said statement, which objection was overruled and request denied". Counsel excepted to the ruling of the court and reserved bill No. 1.

There is no merit in the bill. The car was physically taken and carried away by

Dillon. Neither Sims nor Bonnie Prestige was present at the taking, but, according to the State's theory, they were guilty of the crime as principals under the act of 1932, because they were concerned therein and aided, abetted, and counselled its commission.

The State could not make out a case against Sims without showing that he was concerned in the commission of the crime, and to that end it was necessary that it first be shown that he was acquainted with Dillon, the chief actor, because it would not be reasonable to suppose that he was concerned in the commission of a crime by a person with whom he was not acquainted. The question was a preliminary one, the State's purpose in asking it being to lay the foundation for the introduction of the testimony on which it relied to connect Sims with the crime. The testimony, sought was relevant and material for that purpose.

Dillon's answer to the question was that he had first met the defendant Sims in the penitentiary. The complaint which counsel for defendant Sims now makes is that the effect of the answer was to put in evidence his character, which was not permissible because Sims himself did not take the stand as a witness and offered no testimony. But counsel did not request the judge to instruct the jury to disregard the testimony in so far as it might reflect upon the character of the defendant Sims. His only objection to the testimony brought out by the question was that it was irrelevant and immaterial, and he requested the judge to instruct the jury to disregard it for that reason. The judge thought the

testimony was relevant and refused counsel's request.

Considering the purpose for which the testimony was offered, the objection of irrelevancy and immateriality was not well founded, and the trial judge did not err in refusing to instruct the jury to disregard it. The rule laid down in Article 442 of the Code of Criminal Procedure is that "The relevancy of evidence must be determined by the purpose for which it is offered". Counsel did not request the judge to instruct the jury to restrict the effect of the testimony to the purpose for which it was admitted, his sole objection being that the testimony was irrelevant and immaterial.

■■■ Bill of exception No. 2 was reserved to the refusal of the trial judge to order a witness to answer a certain question propounded to him by counsel for appellants while the witness was on cross-examination.

The facts in connection with this bill are that a man named Wilson, who was an agent of the Federal Bureau of Investigation, had investigated this case with the view of ascertaining whether or not defendants had violated the Federal statute which makes it a crime for a person to carry a stolen automobile from one state into another. Wilson was called as a witness by the State and was questioned generally concerning the investigation made by him. On cross-examination counsel asked him whether, within his knowledge, his investigation had led to an indictment or other charge being filed against the defendants Herman Sims and Bonnie Prestige in

the Federal court. The witness refused to answer the question, stating as his reason that it was against the rules of the Federal Bureau of Investigation to give out such information. Whereupon counsel for defendants requested the court to instruct the witness to answer the question. The judge refused the request, and to this ruling bill No. 2 was reserved.

There is no merit in the bill, principally for the reason that the question whether there was a Federal indictment against the defendants was wholly irrelevant and immaterial to any question involved in the present prosecution, which was brought in the State of Louisiana under state laws. The only question involved in this prosecution was whether defendants had violated the laws of this state. Furthermore, the court had no right to compel the witness to violate the rules and instructions of the bureau by which he was employed. And, above all, the records of the Federal court were the best evidence as to whether or not an indictment or Federal charge had been filed against the defendants, and these records were available to counsel. The general rule is that parol testimony is not admissible to prove the pendency of an indictment in a court of record because a copy of the indictment and the minutes of the court would be the best evidence of the fact. See Marr's Criminal Jurisprudence, under the general heading "Best Evidence." Article 436 of the Code of Criminal Procedure reads as follows:

"The best evidence which from the nature of the case must be supposed to exist,

and which is within a party's control, must be produced."

■ Bill No. 3 was reserved to certain portions of the argument of the district attorney. The circumstances under which this bill was reserved are as follows: John Dillon had signed a statement in which he detailed at length the facts connected with the theft of the automobile. This statement was not used by the district attorney for the reason that Dillon himself was called as a witness. A copy of the written statement, however, had been delivered to counsel for defendants by the district attorney. While Dillon was on the stand, he was asked on cross-examination whether or not he had made a previous complete and full statement in writing with reference to the crime charged, and he answered that he had. With the written statement before him, counsel for defendants, according to the judge's per curiam, "proceeded to cross-examine the witness with reference to several isolated questions and answers made and contained therein, seemingly in an effort to impeach the witness. The witness answered all the questions from the stand. Although counsel for defendant asked the witness several questions purporting to be contained in the statement, he never at any time while the case was with the defense, offered the previous written statement made by the witness in evidence, which he had in his possession".

In his argument to the jury, counsel for defendant, in discussing the weight to be given Dillon's testimony, "made the statement that John Dillon had contradicted

himself in his previously written statement made to the Sheriff's Department".

According to the judge's per curiam, "the District Attorney, in reply thereto, merely called the attention of the jury to the fact that said statement had not been offered in evidence by counsel for the defendant, although he had same in his possession".

The remarks of the district attorney which were objected to, being in reply to the argument made by counsel for defendants, were not improper. The full written statement made by Dillon could not be offered in evidence by the State because the State used Dillon as a witness. The statement could, however, have been used by counsel for defendants to contradict statements made by Dillon while on the stand, and counsel had no right to argue that there were contradictions between Dillon's written statement and his oral testimony before the jury without exhibiting to the jury the written instrument.

█ The bill of exception shows that counsel for the defendants objected to the remarks made by the district attorney and reserved a bill. But the bill does not show, and it is not contended, that counsel for defendants requested the court to give the jury any instructions with reference to the remarks. The court was not requested to instruct the jury to disregard them. Such being the case, this bill presents nothing for consideration. State v. Cullens, 168 La. 976, 123 So. 645. In State v. Poole, 156 La. 434, 100 So. 613, this court held that a bill of exception of this kind, which does not show that the trial judge

was asked for a ruling and that an exception was taken to such ruling when made, presents nothing for the consideration of an appellate court. See also State v. Genna, 163 La. 701, 112 So. 655, and State v. Glauson, 165 La. 270, 115 So. 484.

█ Bill of exception No. 4 was reserved to the refusal of the trial judge to give the following special charges:

"The first requisite of larceny is the taking possession of property belonging to another. Taking and carrying away, being essential elements of the crime of larceny, no subsequent connection with the property stolen can make one guilty of larceny."

"One who trades in stolen property, having no connection with its original theft, is not guilty of larceny, and his good or bad faith is immaterial."

The trial judge in his per curiam to this bill stated:

"I did not give the charges as written because they did not cover the whole law in the case. The special charges were misleading. It was not contended that defendants on trial were present and took possession of the car at the minute Dillon took it.

"In my charge to the jury, I read Act 120 of 1932 and gave a complete charge on larceny, including the generally accepted definition of larceny."

So far as the record discloses, the trial judge did not reduce his general charge to writing. Since the charge is not in the record, we must accept the judge's state-

ment that he gave a complete charge on larceny, including the generally accepted definition of that crime. Counsel for defendants did not request the judge to deliver his general charge in writing. That was his privilege, but he failed to exercise the right. When the judge's general charge is not in the record, his refusal to give special charges, on the ground that they were covered by his general charge, is not subject to review. State v. Coll, 146 La. 597, 83 So. 844; State v. Peyton, 194 La. 681, 194 So. 715.

Bill of exception No. 5 was reserved to the overruling of a motion for a new trial, which motion was based on the alleged errors set out in the bills numbered 1, 2, 3, and 4, which have been discussed in detail.

For the reasons assigned, the convictions and sentences are affirmed.