25 So.2d 736

**STATE v. BORDE.**

No. 38064.

March 18, 1946.

John R. Hunter & Son, of Alexandria, for defendant-appellant.

Fred S. LeBlanc, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., and Ben F. Thompson, Dist. Atty., and Walter M. Hunter,

Asst. District Atty., both of Alexandria, for the State, appellee.

FOURNET, Justice.

The defendant, Paul Borde, is appealing from his conviction on a charge of aggravated rape and his sentence thereunder to life imprisonment, relying for the reversal thereof on seven bills of exceptions reserved during the trial.

The prosecuting witness, a young woman of approximately 20, lived in Forest Hill, Louisiana, in close proximity to Camp Claiborne, an army camp, where she was employed. On the night of June 6, 1945, she retired about 12:00 or 12:30, after returning from a date with a soldier. She was alone in the house at the time, the young lady with whom she lived being away. Approximately an hour after she retired she was attacked by an unknown assailant, his identity being obscured by the darkness of the room. However, during the terrific struggle that ensued before the assailant accomplished his purpose she was able to determine, and testified accordingly, that he was a man of small stature, that he had a moustache, that he had no upper front teeth, that he wore khaki clothes, and that he spoke with a peculiar accent. The defendant in this case was identified by her as her assailant when he was placed in a line behind a screen with 130 other people, all of whom repeated the words spoken to her on the night she was attacked. He is of small stature, has a moustache, no upper front teeth, and speaks with an accent.

From an examination of the record it appears that evidence was improperly admitted in two instances and improperly excluded in a third.

■ In the first instance the trial judge permitted, over defendant's objection, certain expert medical witnesses who had examined the prosecuting witness shortly after the occurrence to testify as to her prior virginity. (Bill of Exceptions No. 1). This testimony was wholly irrelevant and immaterial, since the defense was not based upon any theory of consent to the act but on an alibi and it could have had no other effect than to confuse and prejudice the jury.

■ It is the universally recognized rule of evidence that facts surrounding the commission of a crime may always be shown, but evidence as to the chastity of the prosecuting witness in rape cases is never admissible except to impeach her when consent is pleaded as a defense by showing the probability of her consent. As expressed by Wharton in his work on Criminal Law, "At common law and under statute, *in the absence of specific provision to the contrary,* the chastity or want of chastity on the part of the female is immaterial in the commission, or the charge of the commission, of the crime of rape; for carnal knowledge of a woman, without her consent and against her will, constitutes rape where she is lewd and immoral and unchaste, just the same as though she were of the most spotless purity and virtue; but on accusation of the commission of the offense against a woman of unchaste or immoral character, her want of chastity may be shown as bearing on the question of consent to the act." 1 Wharton's Criminal Law 929, Section 696. "The prior chastity of

prosecutrix is presumed in law, in the absence of statutory provisions to the contrary, and an attack upon her reputation in this regard, and her good reputation therefor cannot be shown until attacked; and where there is no doubt that consent was absent and force was used, evidence of the chastity or unchastity of the prosecutrix is inadmissible." 1 Wharton's Criminal Law 992, Section 732. See, also, Underhill's Criminal Evidence, 4th Edition, 1274, Section 676; Fite v. State, 139 Tex. Cr.R. 392, 140 S.W.2d 848; Wilson v. State, 17 Tex.App. 525, 533; Patterson v State, 224 Ala. 531, 141 So. 195; Griffin v. State, 155 Ala. 88, 46 So. 481; Rice v. State, 35 Fla. 236, 17 So. 286, 48 Am.St Rep. 245; Jones v. State, 119 Tex.Cr.R. 525, 46 S.W. 2d 308; and Steinke v. State, 33 Tex.Cr.R. 65, 24 S.W. 909, 25 S.W. 287. (Italics ours.)

 The second error was made by the trial judge when he permitted a deputy sheriff to testify, over defendant's objecdefendant was not released (Bill of Exceptions No. 3). Such testimony is immaterial and irrelevant to the issues of the case and and irrelevant to the issues of the case and could have no other effect than to convey to the jury the witness's belief that the defendant was the guilty party, contrary to our jurisprudence that a witness is never allowed to express an opinion or suspicion as to the guilt or innocence of an accused. State v. Robertson, 111 La. 35, 35 So. 375; State v. Bessa, 115 La. 259, 38 So. 985; State v. Vinzant, 200 La. 301, 7 So.2d 917; 2 Wharton's Criminal Evidence 1658, Sections 944 and 945; Underhill's Criminal

Evidence 429, Section 230; and 20 Am.Jur. 633, Section 763.

 The trial judge also erred (Bill of Exceptions No. 4) when he refused to permit Crockett Gunter, a peace officer and one of defendant's witnesses, to testify that immediately after the occurrence the prosecuting witness told him she had been ravished by a soldier for the reason that he (the judge) was of the opinion the prosecutrix could not be impeached in this manner since she did not deny making such a statement to Gunter, she having merely stated she would neither admit nor deny making it, for under the express provisions of Article 493 of the Code of Criminal Procedure "Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. *If the witness does not distinctly admit making such statement, evidence that he did make it is admissible.*" (Italics ours.)

The counsel arguing the case for the state conceded that the court erred in refusing to admit the testimony of Gunter but contends that the impeachment of the prosecuting witness in this respect is on an irrelevant and immaterial matter and is not prejudicial to the defendant's cause since she did not testify she was assaulted by a

soldier or a civilian but merely that her assailant had worn a khaki shirt and that she could not detect any military insignia on his clothing.

This evidence was not only admissible under the plain language of the above quoted article of the Code of Criminal Procedure, but we think that any statement made by the prosecuting witness so soon after the incident that would reflect on the identity of her assailant, when that was the only matter in controversy in the case, was material.

While the trial judge in his per curiam to this bill says the prosecuting witness testified her assailant wore a khaki *shirt* and that she could not detect any military insignia of any kind on his clothes, we find in the note of evidence attached to this bill that Mr. Gunter testified: "I asked her if she knew who it was, a soldier or a civilian, and she said it was a soldier and I asked her how did she know it and she said because he had on khaki clothes *all the way round.*" When further interrogated by him as to whether it could have been a civilian he testified she said: "Well, it could have been, I reckon, *but I think it was a soldier.*" (Italics ours.)

■ However damaging the remainder of the evidence may be, an accused, under the constitution and laws of this state, whether guilty or innocent, is guaranteed a fair and impartial trial, to be conducted in accordance with the rules laid down by the lawmakers themselves.

We do not think there is any merit to the other bills reserved and ordinarily we would not give them any further consideration. However, since these same issues may again arise on the next trial of this case, we are discussing them.

■ The defendant objected to the introduction of four photographs of the prosecuting witness (Bill of Exceptions No. 2) on the ground that they were not properly identified by the photographer and that no foundation had been laid for their introduction.

We think the trial judge properly disposes of this issue in his per curiam and we quote therefrom the following: "The Court felt that the pictures had been sufficiently identified. The pictures were taken and developed in the presence of Ray Stuart, Deputy Sheriff, who had requested that they be made. They were given to him as quickly as developed and had remained in his possession and that of the District Attorney from that moment until the time of trial. They also were identified by the prosecuting witness and there was no doubt that they were pictures of her physical state immediately after the assault."

■ Bill of Exceptions No. 5 was reserved when the trial judge permitted the state's witness Ben Domico, a deputy sheriff, to answer the question: "Did this defendant give you the name of either of the Giliens or Roberts as seeing them on the night that he was suspected of having committed this rape?" The trial judge also properly disposes of this issue in his per curiam and it is to the effect that: "The evidence showed that the officers, including Ben Domico, questioned the defendant

after his arrest as to his whereabouts at the time the crime was committed. He stated that he was not at the scene of the crime but at Crowley and they asked him in detail as to the names of parties who had seen him either on the way to Crowley or at Crowley. He gave them some names and before the defendant or anyone had the opportunity of making contact with these parties, questioned them immediately and it seems that none of them named by him were able to state that they had seen him at that time. On the trial of this case he produced some witnesses whose names he had never mentioned before and the Court felt that the jury was entitled to know in rebuttal that the accused had not named these particular parties who sought by their evidence to establish an alibi for the accused."

The defense was an alibi and we think the evidence was admissible so that the jury could determine how much weight should be given to it.

The next bill of exceptions (No. 6) was reserved when the district attorney, during the course of his closing argument, made the remark that: "Mr. John Hunter, Sr. and Mr. John Hunter, Jr. said that I did not believe in this case and did not in my own conscience believe that this accused was guilty and in answer to that I will say if I did not believe that he was guilty he would never have been brought to trial."

▇ Under the jurisprudence of this state a district attorney is permitted a certain latitude in arguing his case so long as he remains within the bounds prescribed by law and counsel cannot complain about a statement made by the district attorney in his closing argument that was precipitated by such counsel (State v. Poole, 156 La. 434, 100 So. 613; State v. Cullens, 168 La. 976, 123 So. 645; State v. Sims, 197 La. 347, 1 So.2d 541; and the recent decision of State v. Malmay, La.Sup., 24 So.2d 869 [1]), particularly when the jury is properly instructed with respect thereto by the trial judge and it not appearing from the record that the jury was influenced by such remarks or that the same contributed to the verdict returned by them. State v. Tucker, 204 La. 463, 15 So.2d 854, and the cases therein cited.

▇ We think the trial judge properly disposed of this issue in his per curiam and we quote therefrom the following:

"At the inception of the trial the District Attorney announced that he would not ask for a capital verdict. For this reason both counsel for the defendant vigorously maintained that the District Attorney had no faith in his case; that he did not believe in it; argued that if he really thought that the accused was guilty he would ask for the death penalty. This argument was rather pressed and the District Attorney was somewhat goaded into answering the argument made by the defense counsel. The Court felt that it was legitimate for the District Attorney to answer the argument made by counsel and could see no legal grounds for complaint when they provoked the statement made by the District Attorney. Furthermore, the jury was fully in-

---

[1] 209 La. 476.

structed from time to time that they were to take the evidence from the witnesses and the law from the Court and it is the opinion of the Court that they did so."

However, we note the statement of the trial judge that "At the inception of the trial the District Attorney announced that he would not ask for a capital verdict." We think that it is the province of the jury and not that of the court's officials to determine whether a qualified verdict should be returned in cases where the penalty fixed by law is capital. · See Article 409 of the Code of Criminal Procedure.

The last bill was reserved when the trial judge overruled the defendant's motion for a new trial that was based on the issues just disposed of and the usual allegation that the verdict is contrary to the evidence, and, therefore, presents nothing additional for our review.

Since this case was submitted and this opinion written the trial judge, at the request of the district attorney, sought to supplement his per curiam to Bill of Exceptions No. 4.

Under the express provisions of the Code of Criminal Procedure, "After an appeal has been granted no further action in the case can be taken by the trial judge * * *" (Article 545), and we cannot therefore consider this document. State v. Calvin, 209 La. 257, 24 So.2d 467, and the authority therein cited.

For the reasons assigned the conviction and sentence of the defendant are annulled and set aside and the case is remanded for a new trial, in accordance with law.