301 So.2d 630 (1974)
STATE of Louisiana
v.
Grady BREWER and Robert Wilkerson.
No. 54849.
Supreme Court of Louisiana.
October 11, 1974.
*631 William E. Woodward, Leslie D. Ligon, Jr., Clinton, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leon A. Picou, Jr., Dist. Atty., Cynthia Picou, Special Counsel to Dist. Atty., for plaintiff-appellee.
BARHAM, Justice.
The defendants, inmates at Angola, were indicted on September 14, 1973, by the Grand Jury of West Feliciana Parish for the murder of August Kelly. On September *632 15, counsel were appointed to represent them. On September 17, defendants were arraigned and pleaded not guilty. Motions to quash were filed and were heard and denied on September 24. A motion for a continuance heard on October 5, 1973, was also denied. Trial began on October 9, 1973, and the jury returned a verdict of guilty against each defendant on October 10, 1973. On October 19, 1973, each defendant was sentenced to life imprisonment. Defendants have perfected eleven bills of exceptions upon which they rely on this appeal.
BILL OF EXCEPTIONS NO. 1
Defendants moved to quash the indictment on the grounds that there were no women on the grand jury venire or on the grand jury that indicted them. They object to the denial of their motion and have perfected this bill. This Court has been presented with that issue on several occasions and the majority have consistently held that Louisiana Constitution Art. VII, § 41 and Code of Criminal Procedure Art. 402, which do not permit the selection of women for jury service unless they have filed with the clerk of court a declaration of their wish to serve, do not violate the United States Constitution. See State v. Gray, 291 So.2d 390 (La.1974); State v. Baker, 288 So.2d 52 (La.1973); State v. Jack, 285 So.2d 204 (La.1973). It should be noted that the United States Supreme Court has noted probable jurisdiction in a case presenting this issue squarely. Edwards v. Healy, 415 U.S. 911, 94 S.Ct. 1405, 39 L.Ed.2d 465 (1974). However, a substantial majority of this Court have rejected the objection posed here.
BILLS OF EXCEPTIONS NOS. 2 AND 5
These bills were reserved when the court refused to order the State to supply, pursuant to a motion for a bill of particulars, the names and addresses of the witnesses who testified before the Grand Jury and of those having knowledge of any material information relevant to the charges against Robert Wilkerson. The Official Revision Comment (a) to C.Cr.P. Art. 484 articulates the guidelines within which a court should consider defense requests for information from the State. It states that the defendant is entitled to know what the State intends to prove; but the bill of particulars cannot be employed as a "fishing expedition" for details of the State's evidence nor to harass the State by demanding nonessential details. This Court addressed itself to the issue of a defendant's demand for a list of the State's witnesses in State v. Brewer, 263 La. 113, 267 So.2d 541 (1972), and it was held there that the demand lacked merit because it amounted to a request for extended pre-trial discovery. Accord: State v. Fox, 251 La. 464, 205 So.2d 42 (1967); State v. Hopper, 251 La. 77, 203 So.2d 222 (1967), vacated 392 U.S. 658, 88 S.Ct. 2281, 20 L.Ed.2d 1347, on remand, 253 La. 439, 218 So.2d 551 (1969), certiorari denied, 396 U.S. 1012, 90 S.Ct. 545, 24 L.Ed.2d 504 (1970); State v. Andrus, 250 La. 765, 199 So.2d 867 (1967); State v. Jones, 249 La. 324, 186 So.2d 608 (1966).
These bills are without merit.
BILLS OF EXCEPTIONS NOS. 3 AND 4
The third bill was reserved following the court's refusal on October 5, 1973, to grant a motion for continuance filed on September 22. The fourth bill was reserved when the court refused to grant an oral motion for continuance made by both defendants immediately preceding the trial on October 10, 1973. The basis of both motions was that there was insufficient time to prepare the case since the trial was approximately three weeks after appointment of counsel. In the oral motion by the defendants, they also expressed their desire to hire counsel of their own choosing and alleged that they had not been given enough time to do so. In its *633 per curiam to these two bills, the court stresses the fact that no evidence was presented to support any lack of preparation on the part of the attorneys nor any reluctance on their part to proceed to trial. C.Cr.P. Art. 707 provides that a timely motion for continuance may be granted in the discretion of the trial judge if there is good ground therefor. Absent abuse of this discretion, there are no grounds upon which we can reverse. The record does not reflect any such abuse. The alleged murder occurred at Angola, and all the witnesses were inmates and guards; therefore there would seem to have been no time problem involved in contacting and interrogating them. In fact, as stated by the trial judge in the record, delays would tend to result in the dispersal of the witnesses as inmates would be released from custody. Further, the record does not support any contention of unpreparedness, as the defense attorneys appeared to be fully prepared and cognizant of all aspects of the case throughout the trial.
Defendants' claim that they were being denied the right to choose their own counsel is also without merit. The motion was not made until the day of the trial, although upon questioning one of the defendants admitted to having had knowledge of the murder charge as early as August 2, 1973. Both defendants were indigent, and both admitted that it was probably impossible for their families to retain attorneys to represent them. In State v. St. Amand, 274 So.2d 179, 189 (La.1973), this Court held that although an accused has the right to counsel of his own choosing to defend him on a criminal charge, this right does not permit "* * * arbitrary action which obstructs orderly procedure in the courts. * * *" The Court in St. Amand further held that the right to choose one's attorney must be exercised at "* * * reasonable time, in a reasonable manner, and at an appropriate stage. * * *" We hold that absent any showing of incompetence on the part of the attorney appointed, and without having a privately retained attorney to take his place, a defendant's motion for a continuance on this ground presented on the day of the trial can be overruled without such action constituting abuse of the trial judge's discretion. Cf. State v. Austin, 258 La. 273, 246 So.2d 12, 13 (1971).
Moreover, C.Cr.P. Art. 707 stipulates that an application for continuance shall be by written motion, and when made by a defendant, must be verified by his or his counsel's affidavit. On this ground as well as those discussed above, we hold that these bills do not present any reversible errors.
BILLS OF EXCEPTIONS NOS. 7 AND 9
Both these bills concern the court's restrictions on the voir dire examination of jurors by the defense attorneys. The first question that defense counsel sought unsuccessfully to ask was, "If a witness were to testify for the State or the defense, who is serving a life term for murder..." (at this point the question was interrupted by the judge). The second question, also interrupted, was "Regardless of what a witness's status might be whether he be an inmate or..."
An error complained of by a defendant is not grounds for reversal unless in the opinion of this Court it appears that it has probably resulted in a miscarriage of justice, is prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitutional or statutory right. C.Cr.P. Art. 921. We do not need to reach the issue of whether or not the disallowance of these questions constituted error, because even if this were so, the error would not be reversible. Only the State presented witnesses who testified about the circumstances surrounding the murder as to the guilt or innocence of the accused. These witnesses were inmates as well as guards from Angola. The defense called only two witnesses; *634 one was an attorney and the other was an inmate and neither gave testimony bearing upon the guilt or innocence of the accused. Defendants sought to test bias or prejudice in jurors upon receiving evidence from different sources. Their cases did not pit inmates' credibility against other witnesses' credibility. Any bias against inmates on the part of any of the jurors would have been at least as prejudicial against the State's case as against the defendants' case, particularly since the State's principal eyewitnesses were inmates. Moreover, when the inmates who were testifying for the State were on the witness stand, it was defense counsel who introduced evidence of their convictions in order to impeach their credibility. No prejudice flowed from the court's ruling.
Bill No. 9 was reserved in relation to defense counsel's questions to a juror concerning his understanding of the concept of reasonable doubt. An examination of the record shows that the judge read and explained the definition of reasonable doubt clearly to each prospective juror. Defense counsel was permitted to ask numerous questions about reasonable doubt; he was interrupted only when his questions became repetitious. We hold that the judge in no way abused his discretion in refusing to allow further questioning on this issue.
These two bills are without merit.
BILL OF EXCEPTIONS NO. 10
This bill concerned an objection to the introduction into evidence of a bloodstained shirt on the grounds that ownership of the article had not been established. However, it was neither briefed nor argued, and thus presents nothing for our review. State v. Richmond, 284 So.2d 317 (La.1973); State v. Edwards, 261 La. 1014, 261 So.2d 649 (1972).
BILL OF EXCEPTIONS NO. 11
This bill was reserved upon the denial of the motion to quash the indictment on the grounds that one of the grand jurors did not possess the qualifications mandated by C.Cr.P. Art. 401, i.e., that he had not resided in the Parish of West Feliciana for a full year prior to serving on the grand jury. From the record it appears that Mr. McMorris, the juror in question, kept a trailer in the parish and was registered to vote there. Further, he stated that his intent was to retain his domicile there at all times. His employment as a construction worker necessitated frequent absences and travel to different areas in the south. However, these temporary absences do not disqualify him as a juror because they do not result in forfeiture of domicile. Cf. State v. Peyton, 194 La. 681, 194 So. 715 (1940).
There is no merit to this bill.
BILLS OF EXCEPTIONS NOS. 6 AND 8
Bill No. 6 was reserved when the trial court overruled defense counsel's objection to the defendants being taped and shackled. Bill No. 8 is premised upon the court's refusal to grant a mistrial after the jury venire was allowed to see the defendants in this condition. The taping and shackling occurred after the following exchange of comments:
"BY GRADY BREWER: We didn't want these lawyers. We are not going to sit back and be kangarood and just be used and misused and all our rights taken from us. * * *
"BY THE COURT: What are you going to do about it?
"BY GRADY BREWER: Not going to trial.
"BY THE COURT: This is number 1.

*635 "BY ROBERT WILKINSON [sic]: Shackles and everything? (Emphasis here and elsewhere supplied)
"BY THE COURT: You must be quiet and behave yourself. We are going to trial.
"BY ROBERT WILKINSON [sic]: It is a known fact, Judge Bennett...
"BY THE COURT: All right sheriff, there will be no more of this talking. We are going to trial.
"BY GRADY BREWER: You are going to have to fix me so that I cannot talk and tell the truth...
"BY THE COURT: That is exactly what I am going to do. Sheriff, put tape on this man.
"BY MR. LIGON: We object.
"BY THE COURT:... I am going to conduct this trial in an orderly manner and I have warned these men that that is exactly what I am going to do and that is what I am going to do. You open your mouth one more time...
"BY GRADY BREWER: It is already open. My mouth is already open.
(THE DEFENDANTS WERE REMOVED)
"BY THE COURT: Tie their hands behind their backs and tape up their mouths and let them sit here. * * *."
In his per curiam attached to these bills the judge states that he was acting pursuant to the powers granted him under C.Cr.P. Art. 17, which gives a court the power and the duty to require that criminal proceedings be conducted in a dignified, orderly, and expeditious manner and to control the proceedings so that justice is done. In order to protect the right of these defendants to be present during a capital trial, the court felt that the discipline employed was necessary. We hold that the judge abused his discretion by taping and shackling one of the defendants, Wilkerson. However, it was no abuse of discretion to do so to the other, Brewer. Defendant Brewer made clear his intention to disrupt the court and his disrespect for the proceedings in the colloquy reproduced supra. However, defendant Wilkerson only made two remarks, which are italicized, and neither of these manifested any similar intent. It clearly appears that Wilkerson's right to be present at the trial free from the physical restraints necessitated by Brewer's disruptive attitude and actions was denied because of Brewer's behavior. A defendant who is taped cannot possibly confer with his attorney during the course of the trial. Additionally, regardless of the judge's charges to the contrary, it is conceivable that the jury might be somewhat prejudiced by seeing him in this condition; the defendant has a right to a trial free from any such prejudice unless he abuses this right, as defendant Brewer did in this case. On this basis, we feel that we must reverse defendant Wilkerson's conviction and sentence and remand his case for a new trial.
There was no reversible error as to defendant Brewer. Under the United States Supreme Court holding in Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) a trial judge may in his discretion bind and gag an obstreperous defendant, thereby permitting his continued presence in the courtroom. The record supports the court's decision that such measures were necessary.
Bill No. 8 also alleges that the judge's remarks to the jury concerning the need for taping and shackling the defendants were prejudicial. In his explanation to the jury the judge stated that the court was authorized to take whatever measures are necessary "[w]hen they refuse to follow the rules of the court and remain quiet when they are ordered to do so, when they disrupt the proceedings of the court by this manner of using methods that disturb and *636 absolutely prohibit a formal and proper conduct of administrations of the court. * * *" He explained that such restraining measures were necessary in order that the proceedings be conducted in such a manner that the defendants could have all their rights under the law. He further stated that these measures were necessary in this particular case because these accuseds had disturbed the proceedings to such a degree on the day before.
Because we find that defendant Wilkerson did not in fact disturb the proceedings to which the judge refers, and was thus prejudiced by being taped and shackled, we also hold that the judge's instructions served to compound the prejudice against him and are therefore reversible error as to Wilkerson. This defendant did not refuse to follow any instructions or rules, nor did he engage in any disruptive behavior, contrary to what the judge told the jury about him.
As to defendant Brewer, a reading of the transcript shows this bill of exceptions to be without merit. The court gave lengthy and repeated instructions to those being questioned for jury duty as well as the jury that was ultimately empanelled. Each prospective juror was personally asked if the defendants' presence in shackles detracted from his ability to give them a fair trial. The single prospective juror who felt that this was so was immediately excused. The judge's explanation of why he found it necessary to tape and shackle the defendants is an important part of his instructions to the jury, and it does not constitute a violation of C.Cr.P. Art. 806, which prohibits a charge concerning or commenting upon the facts of the case. Neither were the remarks prejudicial to this defendant.
We affirm the conviction and sentence as to defendant Grady Brewer. We reverse as to defendant Robert Wilkerson on the basis of Bill of Exceptions No. 6 and remand for a new trial consistent with the holding in this case.
SANDERS, C. J., concurs in part and dissents in part with written reasons.
SUMMERS, J., concurs in part and dissents in part.
MARCUS, J., concurs in part and `dissents in part and assigns reasons.
MARCUS, Justice (concurring in part and dissenting in part).
I am unable to appreciate the distinction made by the majority between the activities of Brewer and Wilkerson. I do not consider that the trial judge abused his discretion in taping and shackling both defendants. It is apparent that his actions were necessary in order to insure that the trial be conducted properly with the continued presence of defendants in the courtroom. La.Code Crim.P. art. 17 (1966); Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).
Accordingly, I concur in that portion of the decree which affirms the conviction and sentence of Grady Brewer. I respectfully dissent from that portion which reverses the conviction and sentence of Robert Wilkerson and remands for a new trial.
SANDERS, Chief Justice (concurring in part and dissenting in part).
At the time of the murder charged here, the defendants were inmates of the Louisiana State Penitentiary. As their trial began, both prisoners voiced opposition to going to trial. The dialogue, set forth in the majority opinion, demonstrates that both of them were vocal and unruly in the courtroom. Based on the total atmosphere, a conclusion might well be reached that preventive measures were required. The trial judge is in a better position to determine the need for such measures than is this court.
Here, the trial judge assessed the situation and ordered both defendants taped and *637 shackled. In my opinion, the record is insufficient to show an abuse of discretion. LSA-C.Cr.P. Art. 17; Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).
For the reasons assigned, I concur in that portion of the decree affirming the conviction and sentence of Grady Brewer. I respectfully dissent from the reversal of the conviction and sentence of Robert Wilkerson.